| 2  245
J114 479

RUSSELL and Others, Plaintiffs, v. STEPHEN F. ELLIOTT and Others, Defendants.

A *mandamus* lies to compel the Judge of a District Court to enter judgment on the report of a referee.

The Court may order a reference to ascertain the damages sustained by reason of an injunction issued without cause.

The right of trial by jury may be waived in the mode prescribed by law.

A party filing an *undertaking* to obtain an injunction, is deemed to have waived the right to insist on a trial by jury; and consented that the damages may be ascertained in the mode prescribed by the statute; and an order of reference is no violation of the constitutional right to trial by jury.

APPLICATION for *mandamus* to the District Judge of the Fourth Judicial District.

The defendants filed an affidavit in this Court, stating that in February, 1851, the plaintiffs instituted a suit in the District Court to enjoin a judgment which the defendants had recovered against the plaintiffs; that an injunction was granted and served; that on the 11th of March, 1851, the injunction was dissolved, and a reference ordered to F. J. Lippitt to assess the damages sustained by the defendants by reason of the injunction; that on the 17th of March, the referee reported the damages at $300; that on the 28th of March, the plaintiffs obtained an order requiring the referee to report the items of the damages; that on the 15th of October, the defendants, on notice to the plaintiffs, obtained an order setting aside the order of March 28th, and confirming the report of the referee, and ordering judgment and execution thereon; that the clerk neglected to enter the judgment; but issued the execution; that the execution was afterwards set aside, on motion of the plaintiffs, whereupon the defendants moved for judgment on the confirmed report of the referee; but the judge refused to render such judgment, on the ground that the Court had no power to do so; and that such judgment was asked only against the plaintiffs in the injunction suit, and not against the sureties in the injunction undertaking.

The defendants therefore prayed this Court to grant a *mandamus*, directing the District Judge to enter judgment, &c.

*A. T. Willson*, for the application.

*Chetwood, Edwards, Rose*, and *Turk*, contrà.

Chief Justice MURRAY delivered the opinion of the Court. The plaintiffs sued out an injunction, under the act of 1850, which was dissolved by the District Court, and the question of damages referred. Upon the coming in of the report, the Court refused to enter judgment thereon, the statute of 1850 having been repealed, and the question of the constitutionality of such reference being raised. There is no doubt as to the mode pursued; and unless this Court interfered by *mandamus*, the defendants are without a remedy in the premises.

The Act of 1851 saves the rights of parties in actions and proceedings taken before·the repeal of the former act: so that the only question of any importance is, whether the reference in this case was an infringement of the plaintiff's constitutional right of trial by jury. The 120th section of the Practice Act of 1850, provides, that "The Court shall require a written undertaking upon the part of the plaintiff, with sufficient security, to the effect that the plaintiff will pay to the party enjoined such damages, not to exceed an amount specified, as he may sustain by reason of the injunction, if the Court shall finally decide the plaintiff was not entitled thereto. The damages may be ascertained by a reference, or otherwise, as the Court may direct." It is contended that the words, "the damages may be ascertained by a reference, or otherwise, as the Court may direct;" mean the amount of damages or sum to be specified in the undertaking required by the Court. This position is fortified by the author of Monell's Practice. Without inquiring what may have been the circumstances in New York which induced this peculiar construction, I am of opinion that our legislature had a different intention in passing this section; and that the obvious meaning was to refer these questions of damages to referees, instead of encumbering the records and occupying the time of the Court with their investigation.

The 3d section of the Declaration of Rights, in the Constitution of California, provides, that "the right of trial by jury shall

be secured to all, and remain inviolate forever; but a jury trial may be waived in civil cases in the manner to be prescribed by law." This section differs but little from similar provisions in the Constitutions of other States; and the decisions which have been made by other Courts are not inapplicable. Our Constitution expressly recognizes the power to waive a jury trial. To compel an acceptance of a trial by jury in all cases, might, in many instances, work as great a hardship as a denial of the right of jury trial; and if a rigid adherence to the provision were enforced, parties might be deprived of the right of refering their controversies to arbitration, or of seeking any forum for the adjudication of their difficulties, except through the medium of twelve men. Here the law has prescribed the manner in which a jury trial shall be waived. . . . . It is declared by the statute giving the remedy by injunction, that the damages sustained by the wrongful suing out of the writ, and availing one's self of the stringent and extraordinary process of the Court, shall be assessed by a referee. When the plaintiff filed his undertaking, he must be considered as having consented to this summary proceeding, in exchange for the process of the Court. The proceedings upon the undertaking must be regulated by the statute authorizing the injunction; and the plaintiff having pursued his remedy with full knowledge of this fact, is deemed to have waived his right to a jury trial, and consented to this mode of proceeding.

This question was substantially decided in the cases of the Bank of Columbia v. Okely, 4 Wheaton, and Lewis v. Garrett's Admir., 5 How. Miss. 454. In the language of the former case, this provision in our Constitution was intended "to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." It is a mistake to suppose that the Constitution has arbitrarily imposed the trial by jury in every case, and that every act of the legislature, similar to this, is unconstitutional. Strictly speaking, it may be true that the common law did not exist here at the time of the formation of our State Constitution; but inasmuch as the trial by jury has been borrowed from the common law, it may not be improper to say that the convention intended to secure the right of jury trial as

known at common law, and understood in the United States. Without some corrective, our system of jurisprudence would become clumsy and unwieldy; and the immense delay and costs to litigants would render it a curse, instead of what it was designed to be, a blessing.

In the case of Garcie *v*. Sheldon, 3 Barbour, 232, it was held that the Court had no authority to order a reference, unless consent to that effect was contained in the undertaking. Whether there was a provision in the statute of New York similar to the one quoted from our act, does not appear. The Court based their decision upon a rule of the Court of Chancery, requiring such a clause to be inserted; without which, and in the absence of a statute, the reference was improper.

We are of opinion that the reference in this case was properly ordered; and that a *mandamus* should issue, directing the District Judge to enter judgment.

Ordered accordingly.