[Crim. No. 1611.  In Bank.—July 3, 1911.]

In the Matter of TIREY L. FORD, on Habeas Corpus.

CRIMINAL LAW.—RIGHT TO SPEEDY TRIAL WITHIN SIXTY DAYS—DISMISSAL OF PROSECUTION—ABSENCE OF GOOD CAUSE FOR DELAY.—Section 13 of article I of the state constitution guarantees to every person charged with crime the right to a speedy and public trial, and in order to prescribe with definiteness what should constitute a reasonable time under that mandate, section 1382 of the Penal Code enacts that unless good cause is shown to the contrary a prosecution

must be dismissed against a defendant when an indictment or information has not been filed against him within thirty days after he was committed to answer, *or* he is not brought to trial within sixty days after the filing of the indictment or information against him and the trial had not been postponed on his application.

ID.—VIOLATION OF CONSTITUTIONAL GUARANTEE.—The effect of that code provision is to imperatively fix the time as sixty days within which, under the constitutional guarantee, a defendant must be brought to trial, and to declare that the guarantee is violated and the defendant entitled to a dismissal of the indictment against him when he is not brought to trial within said sixty days after it is filed, unless good cause for not doing so is shown on the postponement of his trial beyond that period is made on his application.

ID.—DUTY OF COURT TO DISMISS INDICTMENT—HABEAS CORPUS—DEFENDANT IN CUSTODY.—Where a defendant is not brought to trial within the statutory period, and no good cause is shown by the prosecution for a delay, it is the imperative duty of the superior court, on a motion of the defendant to that end, to order the indictment dismissed. The court is without discretion in the matter, and if it denies the motion and the defendant is retained in prison, he has a right to apply to the supreme court for a writ of *habeas corpus* to be discharged from custody thereunder, and when it appears upon the hearing that there was no good cause for delay of the trial beyond the sixty days provided in the statute, his discharge will be ordered.

ID.—SELF-INVITED IMPRISONMENT—VOLUNTARY SURRENDER OF DEFENDANT—REFUSAL OF WRIT.—The right to a writ of *habeas corpus* to determine the illegality of a detention under criminal process is not intended to apply, and may not be invoked, when the imprisonment which is made the basis of its issuance is self-invited, and the surrender by the sureties is made at the instance of the petitioner, and is solely for the purpose of making a case on the face of the petition to which the provisions of the *habeas corpus* act will apply.

ID.—DEFENDANT ADMITTED TO BAIL—SURRENDER BY SURETIES AT REQUEST OF DEFENDANT.—The writ of *habeas corpus* cannot be used to secure the discharge of a defendant indicted for bribery, on the ground that he had not been brought to trial within the statutory period and that the delay was without good cause and against his protest, when it appears that he had been admitted to bail during that period, and had procured the sureties on his bail bond to surrender him into custody solely for the purpose of working an imprisonment upon which to base an application for the writ.

ID.—MANDAMUS LIES TO COMPEL DISMISSAL OF PROSECUTION.—Where the superior court, without good cause and arbitrarily, has postponed the trial of a defendant without his consent beyond the sixty days within which the statute declares he must be tried, or the indictment against him dismissed, he is entitled to relief by a

proceeding in *mandamus* to compel a dismissal of the indictment. (*Strong v. Grant*, 99 Cal. 100, disapproved.)

ID.—RULES REGULATING ISSUANCE OF WRIT—CONTROLLING DISCRETION—COMPELLING COURT TO ACT IN PARTICULAR WAY.—While the general rule obtains that a writ of mandate cannot be issued to correct the errors of a court in passing upon questions regularly submitted to it in the course of judicial proceedings, or to control the exercise of its discretion, it is not universally true that such writ will not issue to control such discretion or to require a judicial tribunal to which a matter for determination is submitted, to act in a particular way.

ID.—EVIDENCE OF GOOD CAUSE FOR DELAY IN TRIAL.—Such a writ will only issue where there is an entire absence of any showing constituting good cause presented in the superior court upon the hearing of the motion to dismiss. If the evidence presented on that subject was conflicting, or on the conceded facts in evidence a reasonable deduction therefrom would support the action of the trial court in denying the motion, a writ of mandate will be denied.

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of the City and County of San Francisco.

The facts are stated in the opinion of the court.

A. A. Moore, Garret W. McEnerney, and Stanley Moore, for Petitioner.

C. M. Fickert, District Attorney, and A. E. Lane, Assistant District Attorney, for Respondent.

LORIGAN, J.—Petitioner seeks to be released from the custody of the sheriff of the city and county of San Francisco on *habeas corpus*.

On May 25, 1907, fourteen indictments, and on March 26, 1908, three other indictments, were returned and filed against petitioner charging him with bribery of various members of the board of supervisors of the city and county of San Francisco in connection with the granting of an electric overhead trolley system franchise on certain streets of said city to the United Railroads Company, a corporation.

Petitioner gave bail under all these indictments and was at liberty upon the same until about the time of his application for this writ. His trial under the first series of fourteen indictments was set for September 12, 1907, upon which date he was

tried upon one of them resulting in a disagreement of the jury. Between this last date and May 2, 1908, he was tried on two other indictments of this first series and acquitted. A trial of petitioner was not had under any other of the indictments of said series. Various dates, however, were fixed therefor between September 12, 1907, and February 17, 1910, and continuances had until this latter date, sometimes with the consent of petitioner and sometimes against his protest.

No trial of petitioner was had under any of the second series of indictments returned March 26, 1908. One of these was dismissed by the court and the trial of petitioner upon the others was, from a date originally fixed therefor, from time to time continued up to February 17, 1910, sometimes with the consent, and at other times, against the protest of petitioner.

On February 7, 1910, the district attorney moved to dismiss all these indictments on the ground of lack of evidence to convict petitioner. This motion was denied by the court and by consent of petitioner the trial under all these indictments was continued until February 17, 1910. On this latter date when the cases were again called for trial petitioner announced his readiness to proceed therewith, but the court, of its own motion, continued the trial until April 25, 1910, against the objection and protest of petitioner. On April 25, 1910, the date to which said trial had been continued, petitioner moved the court to dismiss all of said indictments upon the ground that the trial of petitioner under each of them had been continued and postponed for more than sixty days last past without his consent and against his protest, insisting that under section 1382 of the Penal Code he was entitled to a dismissal of each and all of said indictments. The court without disposing of said motion to dismiss and against the objection and protest of petitioner, made an order continuing the trial of petitioner under all of said indictments and his motion to dismiss the same until July 14, 1910. Thereafter, and on June 22, 1910, petitioner, who had been theretofore at liberty on his bail bond given on all these indictments procured his sureties to surrender him to the custody of the sheriff of the city and county of San Francisco, and immediately thereafter applied to this court for this writ of *habeas corpus,* which was granted. In making the order for the writ, bail, pending the hearing and disposition by this court, in the same amount as under the indictments, was fixed.

This was given by the petitioner who is now at large thereunder.

Having stated the facts, we now come to a disposition of this matter after a hearing had on the return to the writ.

The constitution of this state guarantees to every person charged with crime the right to a speedy and public trial. (Const., art. I, sec. 13.) In order to prescribe with definiteness what should constitute a reasonable time under the constitutional mandate, it is declared in the Penal Code that unless good cause is shown to the contrary a prosecution must be dismissed against a defendant when an indictment or information has not been filed against him within thirty days after he was committed to answer, *or* he is not brought to trial within sixty days after the filing of the indictment or information against him and the trial had not been postponed on his application. (Pen. Code, sec. 1382.) The effect of the last portion of the code provision is to imperatively fix the time as sixty days within which, under the constitutional guarantee, a defendant must be brought to trial and to declare that the guarantee is violated and the defendant entitled to a dismissal of the indictment against him when he is not brought to trial within said sixty days after it is filed, unless good cause for not doing so is shown or the postponement of his trial beyond that period is made on his application.

The claim of petitioner is, that in clear violation of the constitutional guarantee and the provision of the Penal Code, he is retained in custody under the indictments against him and is entitled on the showing made at the hearing in this proceeding to a discharge from custody.

At the hearing the main question presented was whether under the provision of the Penal Code referred to there was good cause shown by the prosecution which warranted the superior court in continuing the trials of petitioner from February 17, 1910, to April 25, 1910, and again from the latter date to July 14, 1910, over the protest and objection of the petitioner, and in denying his motion for a dismissal of the indictments, which was, in effect, the result of continuing the trial and disposition of the motion from April 25, 1910, to July 14, 1910. It was insisted by the respondent to this writ that on the several days when continuances were ordered by the court a showing was made to it that a material witness for

the prosecution—one J. L. Gallagher—upon whose testimony the prosecution relied for a conviction, could not be produced and that this showing constituted good cause warranting the orders made. On the part of the petitioner the claim is that a simple showing that Gallagher was absent and could not be produced at the dates the trial had been set for, did not amount to a showing of good cause or state any legal justification whatever under the section of the Penal Code for ordering the continuances or declining to grant the motion to dismiss; that it appeared that Gallagher had not been subpœnaed by the prosecution on the trial; that about November 26, 1909, he left California and was then supposed to be somewhere in Europe—the particular locality unknown; that there was no showing made when, if ever, he would return to California, or that he would be available as a witness at any time to which a continuance might be had. We simply state the claims of the parties at the hearing as to the showing of good cause for the continuances, in a general way, because in the view we take as to the right of the petitioner to have the benefit of this writ, we are not called on to now determine whether under the code provision there was any showing of good cause which justified the continuances as ordered by the court.

Undoubtedly, where a defendant is not brought to trial within the statutory period, and no good cause is shown by the prosecution for a delay, it is the imperative duty of the superior court, on a motion of the defendant to that end, to order the indictment dismissed. The court has no discretionary power under such circumstances to further postpone the trial but is required to dismiss the indictment. Where, after such motion is made and denied and defendant is retained in prison, it has been held that he has a right to apply to this court for a writ of *habeas corpus* to be discharged from custody thereunder and that when it appears upon the hearing here that there was no good cause for delay of the trial in the lower court beyond the sixty days provided in the statute, his discharge will be ordered. (*Ex parte Vinton*, (Cal.) 47 Pac. 1019; *In re Bergerow*, 133 Cal. 349, [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828].)

But assuming the right of a defendant to be discharged on *habeas corpus,* when the constitutional guarantee and the statutory provisions have been violated and he is detained in

custody, we do not think that under the later decisions of this court the petitioner is in a position to invoke the benefit of the writ.

It is unnecessary to discuss the history of the writ of *habeas corpus*. That topic is thoroughly treated of in the books. While regarded as the greatest remedy known to the law whereby one unlawfully restrained of his liberty can secure his release, still, whether considered as it existed at common law or under the English statutes, or as guaranteed under the constitutions of the various states, including our own, with appropriate statutory procedure for readily invoking it, the essential object and purpose of the writ is to inquire into all manner of involuntary restraint, as distinguished from voluntary, and relieve a person therefrom if such restraint is illegal. It was never contemplated, as anciently designed, or as at present guaranteed in the different jurisdictions of this country that the writ should be invoked in behalf of a person who was not actually in restraint and involuntarily and illegally so, and the granting of the writ necessary to relieve him from such restraint.

Now, when we examine the facts here it appears that the petitioner at the time when the application for the writ was made to this court was not in actual, involuntary imprisonment such as entitled him to invoke its benefit.

It was shown on the hearing that petitioner after the failure of the court to pass upon his motion to dismiss and the making of the order of April 25, 1910, further continuing his trial, procured the sureties on his bail bond to surrender him on June 22, 1910, into the custody of the sheriff. Application was made on the same latter date to this court for this writ, which at that same date was granted and petitioner was ordered admitted to bail pending its hearing. This bail was at once given by the same sureties and he was released from custody and has been at liberty ever since. While it is true that the petitioner was in the custody of the sheriff for a short time pending his surrender and his admission to bail under the order of this court, it is quite clear that this surrender by his sureties was solely for the purpose of working an imprisonment upon which to base an application for this writ to which otherwise he would not be entitled. It was evidently intended that the custody should endure no longer than

was necessary to make this application and was solely for the purpose of making out a case to support the issuance of the writ.

But the right to a writ of *habeas corpus* to determine the illegality of a detention under criminal process is not intended to apply, and may not be invoked, when the imprisonment which is made the basis of its issuance is self-invited and the surrender by the sureties is made at the instance of the petitioner, and is solely for the purpose of making a case on the face of the petition to which the provisions of the *habeas corpus* act will apply.

This, at least, is the rule firmly established in this jurisdiction where petitions for a writ of *habeas corpus* were made under similar circumstances, and it likewise applies in other jurisdictions. (*In re Gow*, 139 Cal. 242, [73 Pac. 145]. *Ex parte Schmitz*, 150 Cal. 663, [89 Pac. 438], and cases referred to therein.) In both these cases the circumstances under which applications for writs of *habeas corpus* were made were similar to those attending the application at bar. In the last case mentioned, after reciting the fact that the custody into which the petitioner Schmitz had surrendered himself was self-invoked and submitted to only for the purpose of making out a case on *habeas corpus*, this court adopted the principle and rule announced in *In re Gow*, 139 Cal. 242, [73 Pac. 145], where it was said: "Our conclusion is, that such a practice ought not to be countenanced, and hereafter the court will make strict inquiry 'in this class of cases whether the alleged imprisonment is actual and involuntary and if it be found to be, as in this case, a merely nominal restraint voluntarily submitted to for the purpose of making out a case, the proceeding will be dismissed.' And in the Schmitz case this court, after quoting the foregoing, said: 'We deem the rule here declared a most salutary one entirely in accord with the object and purpose of the remedy by *habeas corpus* and adhere thereto.' (See, also, *In re Dykes*, 13 Okla. 336, [74 Pac. 506]; *In re Dill*, (Kan.) 11 Pac. 672; *Commonwealth* v. *Green*, 185 Pa. St. 641, [40 Atl. 96] 21 Cyc. 290.) The writ is discharged and the proceeding is dismissed."

It is, however, earnestly insisted by petitioner, that notwithstanding his surrender into custody by his sureties was at his solicitation and for the purpose of invoking the benefit of this

proceeding on *habeas corpus,* and, hence, his application would fall within the rule laid down in the above cases, still that distinction should be made between his case and the cases cited; that the Gow case was obviously an attempt to have this court determine on *habeas corpus* the validity of a local municipal ordinance; the Schmitz case to have determined on *habeas corpus* the validity of an indictment; that these were questions which could be submitted for original determination in the trial court and if decided adversely to either petitioner he had a remedy by appeal, in the one instance to the superior court, in the other to the district court of appeal; and that for these reasons, aside from voluntary surrender, this court was warranted in refusing to entertain the writs in those cases; that on the other hand, in the case of petitioner there is no other remedy save the writ of *habeas corpus* which he can invoke for a violation by the superior court of his constitutional right to a speedy trial.

Giving due consideration to these suggestions, it is to be observed that the denial of the writ to petitioners in the cases cited was not placed on the ground that the points made on the hearing for a discharge under the writ of *habeas corpus* were available to the defendants in the trial court or on appeal, but the refusal to entertain the proceedings was placed specifically on the grounds that voluntary imprisonment, had for the sole purpose of making a case on *habeas corpus,* was contrary to the spirit, purpose, and object of the writ and was an abuse of it. As the showing here clearly brings petitioner within the rule announced in the cases referred to we perceive no reason why in his case it should not be adhered to and his petition dismissed.

Nor, as claimed by petitioner, is he without remedy unless in a *habeas corpus* proceeding, because we are satisfied that where a superior court, without good cause shown therefor, and arbitrarily, has postponed the trial of a defendant without his consent beyond the sixty days within which the statute declares he must be tried, or the indictment against him dismissed, he is entitled to relief by a proceeding in *mandamus.*

It is true that the contrary view was entertained in *Strong* v. *Grant,* 99 Cal. 100, [33 Pac. 733], which was a proceeding in *mandamus* to compel the superior court to dismiss a criminal prosecution for failure to bring the petitioner to trial within

sixty days after the filing of the information against him. It was there held that *mandamus* could not be issued to correct errors of a court in passing upon a question regularly submitted to it in the course of a judicial proceeding, or to control the exercise of its discretion; that the petitioner Strong having invoked a judicial decision in submitting his motion for a dismissal to the superior court, although the court may have erred in the decision of the question then submitted, the error could not be corrected on *mandamus.*

But it is quite apparent that if, as we hold, one will not be permitted to invoke proceedings in *habeas corpus* where his surrender into custody by his sureties is self-solicited, and his imprisonment thereby voluntarily assumed solely for the purpose of obtaining the benefit of the writ, and the rule in the Strong case that he is not entitled to a writ of mandate is to be adhered to, a peculiar situation arises under which one whose right to a speedy trial guaranteed by the constitution and under the statute is violated is entirely without remedy even when it appears that the postponement of his trial beyond the sixty days is arbitrarily made and unwarranted for any reason.

In this case of *Strong* v. *Grant* the present chief justice concurred in the denial of the application for a writ of *mandamus* because, in his judgment, there were circumstances in the case other than those stated in the main opinion upon which the superior court could without an abuse of discretion hold that there was good cause for delay in proceeding against the prisoner. In such concurring opinion, however, he so clearly presented the remediless situation in which a defendant is placed who is not permitted to invoke either *habeas corpus* or *mandamus* when his trial is arbitrarily and unjustifiably postponed beyond the period fixed by the statute, under the constitutional guarantee of a speedy trial, and the code section in aid of it, that we quote from it. He said: "A person charged with a criminal offense has a right to a speedy trial, in order that if innocent he may go free. To detain him in custody, or to compel him by the exaction of bail to dance attendance upon a court while his trial is arbitrarily postponed without his consent, is not only a wrong and injustice to him, but is a detriment to the public. The design of the statute, quoted in the opinion of the court, is to prevent these

evils. The effect of that opinion, however, coupled with other decisions in similar cases, is to deprive the statute of its intended operation—so far, at least, as its enforcement by this court is concerned—and to pervert it to a use wholly foreign and inimical to its purpose. In effect, it has been held that, no matter how unjustifiably the right secured by the statute has been disregarded by the superior court, the party injured has no remedy except by an appeal to this court, and this obviously is no remedy at all for an innocent man whose trial has been unreasonably delayed, because upon his acquittal he has nothing to appeal from. The only persons who can appeal are those who have been found guilty, and they, if their convictions are otherwise illegal, have no occasion to resort to this statute for their deliverance. The only person, therefore, who can secure its benefits through the intervention of this court is one who stands convicted under a judgment in all other respects free from error, or in other words, one who is actually guilty of the crime charged against him. (*People* v. *Morino,* 85 Cal. 515, [24 Pac. 892].)

It is very safe to say that the legislature would never have enacted such a law if this were the only case in which it could be made effective. The truth is, the law was enacted like all similar provisions relating to criminal procedure, for the benefit of the innocent—and not for the sake of screening the guilty. It is true, with respect to this, as with respect to all rules of procedure deemed necessary for the security of innocent men unjustly accused; guilty men also—being deemed innocent until proved guilty—may take advantage of them, but it is a most extraordinary result that for the wanton and deliberate violation of this rule, an innocent man has no remedy, while one justly convicted of a crime may by means of it evade the penalty. To me it seems there must be a mistake somewhere in the decisions that lead to such a result, and I think the mistake consists either in holding that the injured party cannot resort to a *mandamus,* as this opinion holds, or, in holding that he cannot resort to *habeas corpus,* as was held upon a former proceeding by this petitioner. (December 12, 1892.)

If an innocent man who is kept in jail month after month while his trial is arbitrarily postponed, cannot resort to this court for relief, either by *habeas corpus* or by *mandamus,*

I know of no other remedy he has.  Appeal, as above stated, is no remedy, for he cannot appeal until after a trial, and the refusal to bring him to trial is the very wrong of which he complains, and moreover, being innocent, it is to be presumed he will be acquitted if he ever is brought to trial, and that he will have nothing to appeal from.

"I cannot bring myself to admit that for such a wrong there is no remedy, and consequently I feel satisfied that either *habeas corpus* or *mandamus* must lie."

Digressing for a moment it may be said that, in the *habeas corpus* proceeding referred to in the foregoing opinion (*Ex parte Strong*, (Cal.), 31 Pac. 574) it was held by this court that while the allegations in the petition, if true, showed that it was the duty of the superior court to dismiss the prosecution, it was held that until the prosecution was dismissed the imprisonment was lawful.  This doctrine, while supported by decisions in other jurisdictions, is opposed to the rulings in *Ex parte Begerow*, 133 Cal. 349, [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828], and *In re Vinton*, (Cal.), 47 Pac. 1019, where it was held that when a motion to dismiss for failure to bring one to trial within the statutory time has been denied by the superior court and no reason or other cause whatever exists or is shown why the defendant has not been brought to trial within the limited time provided by the statute and he is retained in actual, involuntary custody, a writ of *habeas corpus* will lie, and upon such a showing, the defendant petitioner will be discharged from custody thereunder.

Recurring now to *Strong* v. *Grant*, which is the only authority here holding that *mandamus* will not lie even where it appears that the court should have granted the motion to dismiss, and its action refusing it is plainly arbitrary and an abuse of discretion, it will be found that that decision is based upon the general rule referred to therein, that a writ of *mandamus* cannot be issued to correct the errors of a court in passing upon questions regularly submitted to it in the course of a judicial proceeding, or to control the exercise of its discretion.  Several authorities are cited in that opinion illustrating the application of the general rule, but the case of *Lewis* v. *Barclay*, 35 Cal. 213, was particularly relied on and quoted from.  In this latter case a writ of mandate was sought here to compel a county judge to reinstate an appeal

which it was claimed he had erroneously dismissed. In refusing the writ this court said: "The duty to be performed by the respondent in this case was strictly judicial and there was no refusal on his part to perform it. He may, or may not, have erred in the disposition of the case, but whether he did or not his action cannot be reviewed by *mandamus,* nor, indeed, by any other means, for the case is one of which the county court had final jurisdiction, and if error was committed, there is no remedy."

But, while it is true that when the Strong case was decided, and for many years thereafter, the general rule prevailed as laid down in *Lewis* v. *Barclay,* that *mandamus* would not lie to compel an inferior court to reinstate an appeal regularly dismissed even where the appellant was otherwise without remedy, a different view has for several years past been entertained by this court, and in the case of *Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, [114 Pac. 978], it is expressly held that a writ of mandate will lie to the superior court to compel it to reinstate an appeal from a justice's court, erroneously dismissed. So that, in as far as the decision in the Strong case is based particularly on the doctrine announced in *Lewis* v. *Barclay*—a doctrine which no longer obtains here —to that extent has the case of *Strong* v. *Grant* lost its weight as an authority. And, while the general rule announced in *Strong* v. *Grant* that a writ of mandate cannot be issued to correct the errors of a court in passing upon questions regularly submitted to it in the course of judicial proceedings or to control the exercise of its discretion undoubtedly obtains, it is not universally true that such writ will not issue to control such discretion or to require a judicial tribunal to which a matter for determination is submitted, to act in a particular way.

As an illustration, a writ of mandate will issue to compel the superior court to reinstate an appeal erroneously dismissed. (*Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, [114 Pac. 978]) ; to compel a judge to enter judgment on the report of a referee (*Russell* v. *Elliott,* 2 Cal. 245) ; to compel a district judge to issue an attachment for contempt in disobeying an injunction (*Merced Mining Co.* v. *Fremont,* 7 Cal. 130) ; to compel a judge to sign a bill of exceptions (*Lin Tai* v. *Hewill,* 56 Cal. 118; *People* v. *Crane,* 60 Cal. 279) ; to com-

pel the court under the McEnerney Act to order a publication of summons, although the refusal may be based on the insufficiency of the complaint or the accompanying affidavit; to compel a judge to settle a statement or bill of exceptions. Other illustrations, if necessary, might be given. It is hardly necessary to say that in all the matters particularly referred to, the exercise of judicial discretion by the lower court is in the first intsance involved, and yet it is held that on *mandamus* such judicial discretion may be controlled, and the lower court, or judge thereof, compelled to act in a particular way when the facts are not in dispute,. and the court has come to a wrong conclusion of law therefrom, or disregarded a duty expressly enjoined by the law under the undisputed facts.

This subject of controlling the judicial discretion of the lower court by *mandamus* is exhaustively treated in *Wood* v. *Strother*, 76 Cal. 545, [9 Am. St. Rep. 249, 18 Pac. 766], where, after reviewing the authorities we have referred to and authorities from other jurisdictions, it is said that: "In view of the foregoing cases, it seems a mere perversion of language to say that the writ will never issue to control judicial action or to compel a tribunal to act in a particular way." In this same case the court lays down the test under which the right to a writ of mandate is to be determined, where it is said: "In every case the tribunal that is to act must determine in the first instance whether the case is a proper one for its action. And in our opinion the true tests are whether its determination is intended by law to be final; and if not, whether there is any other 'plain, speedy, and adequate remedy.' If the determination of the tribunal was intended to be final, it is plain that it cannot be disturbed, either on *mandamus* or in any other way. If it was not intended to be final, but there is another 'plain, speedy, and adequate remedy,' the writ cannot issue; for it was not designed to usurp the place of other remedies. But, if the determination was not intended to be final, and there is no other adequate remedy, the writ must issue. Otherwise there would be an admitted wrong without a remedy. The writ issues in such case to prevent a failure of justice. And this is its ancient office. In the language of Lord Mansfield: 'It was introduced to prevent disorder from a failure of justice and defect of police. There-

fore it ought to be used upon all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one.' (*Rex* v. *Barker*, 3 Burr. 1268; see, also, 3 Bla. Com. 110; Tapping on Mandamus, 9; *Commonwealth* v. *Sessions of Hampden*, 2 Pick. (Mass.) 418.)"

There is no finality to an order refusing to dismiss an indictment where a motion is based on the ground that the trial of a defendant has been illegally continued beyond the prescribed period. It may be reviewed on appeal if the defendant is subsequently brought to trial and convicted. There is, however, no appeal directly from the order refusing to dismiss and the right of appeal after conviction affords no adequate remedy, as the defendant may never be brought to trial. Under such circumstances, if a party at large on bail is not afforded a remedy by *mandamus* to correct a clear abuse of discretion on the part of the court in arbitrarily refusing to dismiss the indictment against him, where he has not been brought to trial within the specified period, the constitutional guarantee and the statutory mandate are, as to him, worthless.

While in the Wood case the court was considering more particularly the right to a writ of mandate in civil cases, still the writ lies as well in criminal cases where there is a clear legal right to be enforced, as well as a clear legal duty on the part of the court to discharge it and where there is no other remedy. (Ency. of L. & P., vol. 26, pp. 166, 188, 218.)

It is unnecessary to discuss this matter further. As far as the case of *Strong* v. *Grant* is concerned, we do not think the rule announced there denying a defendant the right to a writ of mandate where he has not been brought to trial within the statutory period and no good cause for the refusal to dismiss exists should be adhered to. The rule is not supported by the weight of authority; finds no support now in the doctrine announced in the case particularly referred to and quoted from to sustain it, and is not consonant with justice, because it deprives the party of all remedy where there may exist an arbitrary violation of his clear constitutional and statutory rights.

In our view, a defendant who claims that the superior court illegally refuses to grant his motion to dismiss an indictment against him where he had not been brought to trial within

sixty days, is entitled to apply to this court for a writ of mandate, and if, upon the hearing thereof, it clearly appears that there was no good cause shown at the hearing of the motion—and upon which showing alone would the court be warranted under the statute in refusing to dismiss: that the action of the court in its refusal was simply arbitrary and amounted to an abuse of discretion, this court will direct a peremptory writ of mandate to issue compelling the superior court to do what, in the absence of such showing, was its clear positive legal duty—dismiss the indictment.

It is, of course, to be understood that such a writ will only issue where there was an entire absence of any showing constituting good cause presented in the superior court upon the hearing of the motion to dismiss. If the evidence presented on that subject was conflicting or on the conceded facts in evidence a reasonable deduction therefrom would support the action of the trial court in denying the motion, a writ of mandate would be denied.

As under the authorities heretofore referred to the petitioner is not in a position to avail himself of this proceeding in *habeas corpus,* his petition therefor is dismissed and he is remanded to custody.

Shaw, J., Angellotti, J., Sloss, J., Henshaw, J., and Melvin, J., concurred.

Beatty, C. J., dissented.