DYER, PETITIONER, *v.* ROSSY, DISTRICT JUDGE, RESPONDENT.

## MANDAMUS Directing the Judge of the District Court of San Juan, Section 2, to Dismiss a Prosecution.

No. 154.—Decided May 2, 1916.

MANDAMUS—PLEADING—ANSWER—MOTION TO DISMISS—DEMURRER.—When in a mandamus proceeding instead of answering the rule to show cause why the writ should not issue, according to section 10 of the Mandamus Act, the respondent files a motion to dismiss the petition which purports only to combat the grounds for issuing the writ and contains no matter denying the facts of the petition, such facts must be taken as confessed as in the case of a demurrer.

ID.—BAIL—SPEEDY TRIAL—DISMISSAL OF PROSECUTION.—Mandamus is the proper remedy for a defendant who when at liberty on bail is unable to obtain a speedy trial, and the writ will issue for the dismissal of the prosecution on that ground.

ID.—DISMISSAL OF PROSECUTION—GOOD CAUSE—DELAY IN TRIAL—DISCRETION OF COURT—APPEAL.—According to subdivision 2 of section 448 of the Code of Criminal Procedure, the trial court is absolutely without discretion and is peremptorily required to dismiss a prosecution unless good cause be shown for not bringing the defendant to trial within one hundred and twenty days; therefore, the reviewing court has a right to examine the record and decide whether good cause was shown and, in the absence of conflicting evidence, to render the judgment which the lower court should have rendered.

ID. — CONTINUANCE — DISMISSAL OF PROSECUTION — DISCRETION OF COURT. — If within the statutory period of one hundred and twenty days the court continue a case to a time still within that period, no question arises of the right of the defendant to have the action dismissed, for within that period the discretion is absolute.

ID.—SPEEDY TRIAL—CONTINUANCE—DISCRETION OF COURT—GOOD CAUSE.—When a defendant moves that his case be dismissed because he has not been tried within the one hundred and twenty days fixed by section 448 of the Code of Criminal Procedure, it is the duty of the .court not to consider whether or not it had discretion to continue the case, but to ascertain whether the trial was delayed for more than one hundred and twenty days without reasonable cause and without the acquiescence of the defendant—that is, to determine whether good ground for the continuance was shown by the prosecution.

ID.—CONTINUANCE—AFFIDAVIT—CONSTRUCTION—CONCLUSIONS OF LAW.—INFORMATION AND BELIEF.—Statements contained in an affidavit of a prosecuting attorney for the purpose of obtaining a continuance should be construed strictly, and he should set up therein definite facts and not mere generalities or conclusions of law. The affidavit should also show what facts are averred of affiant's own knowledge and what upon information and belief.

ID.—AFFIDAVIT—EVIDENCE—ASSAULT AND BATTERY—GOOD CAUSE.—The averments in an affidavit to obtain the continuance of a prosecution for assault

and battery that an absent justice of the peace would testify that the defendant was drunk and excited when he appeared before him and that he said he would have used a pistol against the complaining witness if she had not left the house, do not show a reasonable cause for delaying the trial, for they do not logically establish assault and battery by the defendant.

EVIDENCE—ABSENCE OF WITNESS—CONTINUANCE—NEGLIGENCE.—Under section 202 of the Code of Civil Procedure three things are necessary to put off a trial on account of the absence of a witness: First, that the witness is really material and appears to the court to be so; second, that the party who applied has been guilty of no neglect; and, third, that the witness can be had at the time to which the trial has been deferred and, incidentally, that no similar evidence could be obtained.

ID.—WITNESS—CREDIBILITY—CONTINGENCY.—The fact that defendant may have been unruly and drunk before the justice of the peace and made references to what he would have done in a contingency, has no bearing upon his credibility as a witness.

MANDAMUS—DISCRETION OF COURT.—The writ of mandamus may not be used to control judicial discretion, but judicial acts may be controlled thereby when no discretion arises or when it is abused.

The facts are stated in the opinion.

*Mr. J. Henri Brown* for the petitioner.

*Mr. Salvador Mestre, fiscal,* for the respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

F. E. Dyer, against whom a prosecution is pending, has made an application for a writ of mandamus to compel the District Court of San Juan, Section 2, to dismiss the said prosecution.

In response to the application for a writ of mandamus an order was issued by this court directing the District Court of San Juan, or the judge thereof, to show cause within ten days why the peremptory writ should not issue. In answer to this rule the respondent has filed a motion to dismiss the petition, reciting various grounds therein. Our law of mandamus, in its tenth section, provides that the only pleading admitted on the part of the respondent is the answer. Under section 9 of that law, if no answer be made a peremptory mandamus lies against the respondent, always supposing that the particular act sought to be enforced by the petitioner may be reached by the writ of mandamus. The motion filed in this case is either an answer or it is nothing at all. It only

purports to combat the grounds for issuing the mandamus. In any event, the facts of the petition must be taken as confessed, as in any case of demurrer. The authorities are to this effect when the pleading filed contains no matter denying the facts of the petition. See especially for mandamus *Beadles* v. *Fry,* 2 L. R. A (N. S.) 855; *Thompson* v. *State,* 154 Pac. 503.

The petition in this case set up that the petitioner was charged and tried in the Municipal Court of Bayamón by virtue of a complaint for assault and battery with aggravated circumstances, the essential averments of the complaint being as follows:

That on June 2, 1915, at 7 a. m. and in the ward of Candelaria of Toa Baja, Porto Rico, and within the Municipal Judicial District of Bayamón, Porto Rico, the said F. E. Dyer, voluntarily and maliciously and with the criminal intent of inflicting a serious bodily injury on Martha A. Caul, assaulted and battered her with his fists, causing various marks (*golpes*) on her back and shoulders; that the aggravated circumstance in this case consisted in the fact that the aggressor was an adult male, and strong, and that the person injured was a woman.

The Municipal Court of Bayamón heard the case and rendered judgment on July 17, 1915, finding the petitioner guilty of assault and battery with aggravated circumstances and imposed a fine of $100 and costs, with alternative imprisonment. The petitioner appealed from this judgment and all the documents connected therewith were sent to the District Court of San Juan and were filed therein on July 27, 1915. It appears that the trial there was set for October 7, 1915, on which date the petitioner, with his attorney and witnesses, announced that he was ready for trial and prayed that the trial be had; that *Fiscal* Salvador Mestre, who had been especially designated by the office of the Attorney General of Porto Rico to act in the case and who on all the dates and times mentioned in the petition represented The People of

Porto Rico, by oral motion asked the court to postpone the trial and the court, against the opposition of the petitioner and without a good reason or legal cause (so it was alleged in the petition), granted the motion of the said *fiscal* and the case was postponed and transferred for a new setting.

That the trial of the said cause was set a second time for December 21, 1915, at which time the petitioner appeared with his attorney and witnesses and announced himself ready for trial. The attorney for the Government then presented a written motion asking for the postponement and resetting of the case, which motion was granted by the court against the opposition of the petitioner, without cause (as it is alleged in the petition) for such postponement or without a good reason therefor. On the same date, by oral motion, the petitioner asked the said district court to dismiss the case, basing his motion on section 448 of the Code of Criminal Procedure in connection with section 11 of the same code, inasmuch as more than one hundred and twenty days had elapsed since said prosecution was begun in said court without a trial being had, but the court, without just cause, denied the motion of the petitioner.

The trial of the said cause was set a third time for February 23, 1916, on which date the petitioner appeared with his attorney and witnesses. On that date the *fiscal* presented a written motion and affidavit which set up substantially that one of the most important witnesses for the Government was Pablo Lavandero, justice of the peace of Bayamón in the period covered by the facts complained of; that the said Lavandero was absent in Spain for a brief time and that he was due to return to Porto Rico within a short time; that the statement of the said Lavandero was not cumulative, and that he would testify more or less in the following manner:

"That on the day of the facts complained of, at the request of Martha Caul, he issued a complaint against Dyer; that defendant Dyer was brought into his presence and that he was somewhat drunk, to such an extent that he was very excited and in an angry mood and

he (the justice of the peace) had to indicate to him (Dyer) that if he was not more moderate he would have to be sent to prison; that the said Dyer told him that he had put Mrs. Caul out of his house and that if she had offered any resistance he would have used a pistol that he had against her."

That the said statement was essential, no other witness being able to testify in this regard; that the said Lavandero was a witness in the municipal court, and if he was not previously cited for this trial it was because at the date of the setting of the trial the witness was already away in Spain; that this motion was made in good faith and was not for the purpose of delaying the case; that a good and sufficient cause of action existed against the defendant; that by virtue of the reasons expressed the *fiscal* asked the postponement of this case for a new trial at the convenience of the court.

In the jurat it is merely stated that it was sworn to and subscribed by Salvador Mestre, *fiscal* of the Supreme Court, and certified to by the secretary of the district court.

That the district court, the petitioner goes on to recite, against the opposition of the defendant and without just cause or legal reason and exceeding its judicial discretion, ordered the postponement of the trial for a new setting; that on the same date, February 23, 1916, the petitioner filed a written sworn motion, alleging that more than one hundred and twenty days had elapsed since the beginning of the cause without a trial being held; that the trial of such cause had not been postponed or transferred at the petition or with the consent of the petitioner, and by virtue of the provisions of section 448 of the Code of Criminal Procedure asked the court to dismiss the case, which the court, in excess of its discretion, refused; that the petitioner, at all the times mentioned, has always insisted upon a speedy trial of the cause.

The principal doubt that has arisen in this court has been over the question of whether the writ of mandamus would lie, inasmuch as it is alleged that the postponement of a trial is a matter within the discretion of the court and that mandamus

is not the appropriate writ to control judicial discretion. Section 2 of the Law of Mandamus sets forth that, although the writ may require an inferior tribunal, or a judge thereof, to exercise a particular act or to proceed to the discharge of any of its functions, the writ cannot control judicial discretion.

In California, where they have a statute similar to section 448 of the Code of Criminal Procedure, the court originally decided that the writ of mandamus would not lie. *Strong* v. *Grant,* 99 Cal. 100. In that case Mr. Chief Justice Beatty concurred and filed an elaborate concurring opinion in which he pointed out the injustice of not allowing a man who could not obtain a speedy trial a recourse to habeas corpus or mandamus. He concurred because he thought the particular facts did not justify the issuance of either writ. The California courts have uniformly decided that where a prisoner was out on bail he could not surrender himself for the purpose of testing by a writ of habeas corpus the right of the State to proceed against him. The theory was that as the defendant was at liberty he could not invoke the writ of habeas corpus to restore him to a liberty which he had voluntarily surrendered.

Subsequently, in *Ex parte Ford,* 160 Cal. 334, 116 Pac. 757, where an application for a writ of habeas corpus was made for lack of a speedy trial, the Supreme Court of California denied the application for the writ, evidently on the theory that a writ of habeas corpus did not lie where a petitioner voluntarily surrendered himself, but decided that the writ of mandamus would lie, analyzing and overruling the case of *Strong* v. *Grant, supra.* The Supreme Court of California there held, approving the reasoning of Mr. Chief Justice Beatty, that mandamus was the only available remedy where the defendant was denied a speedy trial. In other words, the case of *Ex parte Ford,* while denying habeas corpus, decided after an able consideration that mandamus was the proper remedy to control particular judicial acts where the duty was clear or where a clear right of a defendant was

involved, as in the present case. The petitioner, Ford, after the decision of the foregoing case, presented an application for a mandamus, which was denied by the lower court on the facts, but the District Court of Appeals, on appeal, reversed the inferior court and the prisoner was discharged. *Ford v. Superior Court,* 118 Pac. 86. Subsequently, in *Hosburgh v. Murasky,* 169 Cal. 50, the Supreme Court of California approved the doctrine of *Ex parte Ford,* saying that mandamus will lie to reinstate an appeal erroneously dismissed, or grant a motion to dismiss an indictment upon which the court below should have acted.

In Oklahoma the same principle has always been applied. *State ex rel Sims v. Caruthers,* 98 Pac. 474; *State v. Cole,* 109 Pac. 736; *McLeod v. Graham, Judge,* 118 Pac. 160. In the last-named case *Ex parte Ford* is cited with approval and the reasoning of Mr. Chief Justice Beatty in *Strong v. Grant* is again quoted. We think it well to reproduce these considerations as they largely controlled *Ex parte Ford*:

"A person charged with a criminal offense has a right to a speedy trial, in order that, if innocent, he may go free. To detain him in custody, or to compel him by the exaction of bail to dance attendance upon a court while his trial is arbitrarily postponed without his consent, is not only a wrong and injustice to him, but is a detriment to the public. The design of the statute, quoted in the opinion of the court, is to prevent these evils. The effect of that opinion (*Strong v. Grant*), however, coupled with other decisions in similar cases, is to deprive the statute of its intended operation, so far, at least, as its enforcement by this court is concerned, and to pervert it to a use wholly foreign and inimical to its purpose. In effect, it has been held that, no matter how unjustifiably the right secured by the statute has been disregarded by the superior court, the party injured has no remedy, except by an appeal to this court; and this, obviously, is no remedy at all for an innocent man, whose trial has been unreasonably delayed, because upon his acquittal he has nothing to appeal from. The only persons who can appeal are those who have been found guilty, and they, if their convictions are otherwise illegal, have no occasion to resort to this statute for their deliverance. The only person, therefore, who can secure its benefits through the inter-

vention of this court is one who stands convicted under a judgment in all other respects free from error; or, in other words, one who is actually guilty of the crime charged against him. *People* v. *Morino,* 85 Cal. 515, 24 Pac. 892. It is very safe to say that the Legislature would never have enacted such a law if this were the only case in which it could be made effective. The truth is the law was enacted, like all similar provisions relating to criminal procedure, for the benefit of the innocent, and not for the sake of screening the guilty. It is true, with respect to this, as with respect to all rules of procedure deemed necessary for the security of innocent men unjustly accused. Guilty men, also, being deemed innocent until proven guilty, may take advantage of them; but it is a most extraordinary result that for the wanton and deliberate violation of this rule an innocent man has no remedy, while one justly convicted of a crime may by means of it evade the penalty. To me it seems there must be a mistake somewhere in the decisions that lead to such a result, and I think the mistake consists either in holding that the injured party cannot resort to a mandamus, as this opinion holds, or in holding that he cannot resort to habeas corpus, as was held upon a former proceeding by this petitioner (December 12, 1892). If an innocent man, who is kept in jail month after month while his trial is arbitrarily postponed, cannot resort to this court for relief, either by habeas corpus or by mandamus, I know of no other remedy he has. Appeal, as above stated, is no remedy, for he cannot appeal until after a trial, and the refusal to bring him to trial is the very wrong of which he complains; and, moreover, being innocent, it is to be presumed he will be acquitted, if he ever is brought to trial, and that he will have nothing to appeal from. I cannot bring myself to admit that for such a wrong there is no remedy, and consequently I feel satisfied that either habeas corpus or mandamus must lie.''

And in *Ex parte Ford* the court further says:

''And in our opinion the true tests are whether its determination is intended by law to be final; and, if not, whether there is any other 'plain, speedy, and adequate remedy.' If the determination of the tribunal was intended to be final, it is plain that it cannot be disturbed, either on mandamus or in any other way. If it was not intended to be final, but there is another 'plain, speedy, and adequate remedy,' the writ cannot issue; for it was not designed to usurp the place of other remedies. But if the determination was not intended to be final, and there is no other adequate remedy, the writ must

issue. Otherwise there would be an admitted wrong without a remedy. The writ issues in such case to prevent a failure of justice. And this is its ancient office. In the language of Lord Mansfield: –'It was introduced to prevent disorder from a failure of jutsice and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one.' (Citing cases.)

"There is no finality to an order refusing to dismiss an indictment where the motion is based on the ground that the trial of a defendant has been illegally continued beyond the prescribed period. It may be reviewed on appeal if the defendant is subsequently brought to trial and convicted. There is, however, no appeal directly from the order refusing to dismiss and the right of appeal after conviction affords no adequate remedy as the defendant may never be brought to trial. Under such circumstances, if a party at large on bail is not afforded a remedy by mandamus to correct a clear abuse of discretion on the part of the court in arbitrarily refusing to dismiss the indictment against him, where he has not been brought to trial within the specified period, the constitutional guaranty and the statutory mandate are, as to him, worthless." 116 Pac. 762.

Now, while we do not want to be understood as agreeing with the California courts, that a defendant may not surrender himself and invoke the writ of habeas corpus, yet we think that no man is bound to give up his liberty and, if he is at liberty under bail, his only actual remedy is by mandamus.

Section 448 of the Code of Criminal Procedure is as follows:

"The court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed in the following cases:

"1. Where a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter;

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within one hundred and twenty days after the filing of the information."

Under this section, where no just cause is shown, the court is peremptorily required to dismiss the case. Where no just

cause is shown, we think there is absolutely no discretion in the court. The right of a man charged with a crime to have a trial within one hundred and twenty days, and the duty of the court to dismiss the suit in the absence of such speedy trial, are co-extensive. Where no showing is made, the court has no discretion to refuse to dismiss the case. Hence, we think primarily that a reviewing court has a right to examine the state of the record to see whether any just cause was made out by the Government. It was pointed out in *Ex parte Ford* that where the application involves the weighing of evidence, or the exercise of a real discretion, the writ of mandamus will not lie; but we agree with the petitioner that there is nothing in this case to involve the exercise of judicial discretion, because we think the application of the *fiscal* was utterly lacking in the essential elements of a valid motion for a continuance. Ordinarily, when it is said, as it frequently has been said, that the matter of the continuance of a trial rests in the sound discretion of a court, no question of a particular statutory right to a speedy trial has been involved. No rights of a defendant to a speedy trial were involved in the vast majority of the decisions which said that a continuance rests in the discretion of a court. For example, if within the one hundred and twenty days the court continue a case to a period still within the one hundred and twenty days, no question of the right of the defendant to have the action dismissed can arise under section 448 of the Code of Criminal Procedure; within that period the discretion is practically absolute. If an application is made without that period, the court, as we have stated, in the absence of a showing, is without discretion. It may be said that the court always has the discretion to continue a case, so far as a mere matter of continuance is concerned, independently of any accrued right of a defendant. When, however, the defendant, as he did in the court below, makes an application that the case be dismissed because it was not tried within the one hundred and twenty days, it becomes the

duty of the court not to consider whether it had a discretion to continue or not, but whether the trial had been put off for more than one hundred and twenty days without reasonable cause and without the acquiescence of the defendant; in other words, it became the duty of the trial court in this case to see whether any just ground had been presented for the postponement of the case for so long a time. The question was whether the prosecuting officer in this particular case had presented just reasons for the delay. The mere fact that the court had continued the case at the instance of the *fiscal* at various times was not a sufficient answer. The trial court should have examined the facts and verified whether the postponement for one hundred and twenty days or more was with just cause. And where there is no dispute as to the facts, the revising court has the same right.

It has also been held that the duty of showing just cause becomes stronger after each succeeding continuance. When the petitioner in this case made his application for a dismissal of the action the case had already been twice continued against his opposition and, as he affirms, without just cause. Now, while his contention that the previous continuances were made without just cause may be mere conclusions of law, we think under the authorities that the burden of proof was on the Government to make some showing that these previous continuances were made with just cause.

Definite facts must be stated, not mere generalities or conclusions of law; and in view of the presumption that the moving party will make the best of his case and state anything calculated to effect a continuance, the statements contained in the affidavit will be construed most strongly against him. 6 R. C. L. 562, and authorities cited in note. The defendant was there at each setting insisting upon a trial. We think that the Government has made no showing whatever, except with regard to the last continuance, and, as we have seen, the facts of the petition are not controverted. We shall however examine the last continuance on the theory that

the previous continuances were made with some legal justification. Nevertheless, by reason of these previous continuances the application of the *fiscal* made in this case for a further postponement was subject to close scrutiny when the motion for dismissal was made.

We think that the mere inspection of the affidavit and motion filed by the *fiscal* shows that the facts about which Lavandero was to testify were extremely remote from the facts of the complaint. It seems to us that the statements of the defendant made before the justice of the peace have practically no probatory or legal force in attempting to establish an assault with the fists by said Dyer in Candelaria. The utmost that may be said of the affidavit is that the defendant was drunk and excited before the justice of the peace, and that he said he would have used a pistol against Mrs. Caul if she had offered any resistance to his attempt to put her out of his house. On its face we do not think that this presented a reasonable cause for the delay of the trial. It has been pointed out that in applications of this character it is not the right of the petitioner to have his personal liberty alone that is involved, but to be free in the community of the charge that is hanging over him. Because an absent justice of the peace could offer evidence that would tend to show that on the day that the events took place the defendant was drunk and excited and said that he would, under certain conditions, have committed violence upon the person of Mrs. Caul, would not tend to prove that he actually did commit such violence. On the contrary, the most reasonable inference from it is that the defendant was denying the act of violence and that he was telling what he might have done upon some occasion not specified, if Mrs. Caul had refused to leave his house. A contingency upon a contingency.

But analyzing the affidavit under the rules laid down by the courts, we think that the facts therein set forth were dubiously relevant and that their materiality was never

shown. In an application for a continuance the materiality of the averments must always be shown.

In *Ford* v. *Superior Court,* 118 Pac. 99, the rules for a motion for a continuance are laid down as follows: "Three things are necessary to put off a trial: First, that the witness is really material and appears to the court to be so; secondly, that the party who applies has been guilty of no neglect; and thirdly, that the witness can be had at the time to which the trial has been deferred;" in other words, the materiality must be shown. 6 R. C. L. 556; 74 A. D. 147.

Our own Code of Civil Procedure declares the law:

"Sec. 202.—A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it. The court may also require the moving party to state, upon affidavit, the evidence which he expects to obtain  *  *  *."

The *People* v. *Gallart,* 11 P. R. R. 361, and *The People* v. *Román,* 18 P. R. R. 217, two criminal cases, also show the requisites for a motion of continuance.

The complaint charges that the defendant battered Mrs. Caul with his fists in Candelaria. The affidavit tends to show that in the event of her refusing to leave his house he would have used a pistol against her. The two things described, the proposed battery and the actual battery, are totally distinct. We think that it was necessary for the Government to show the logical connection between the two events. If it be suggested that in a conflict of proof between the two principal participants the evidence would tend to show that the defendant was angry and drunk, the evidence, while remotely relevant, has not yet been shown to be material. The alleged statements of the defendant, as we have seen, did not admit violence. They tended to deny it. The petitioner's house, neither by the affidavit nor by the complaint, is shown to be located in Candelaria. There is nothing to show that actual assault took place in petitioner's house. He is made

to say that if Mrs. Caul had not left his house he would have used violence against her, but it is not shown that he was alluding to the *res gestæ* of the alleged battery. The petitioner, who is represented as drunk and angry, might have been referring to any antecedent event of recent occurrence or of long standing. It should be added in passing that, if drunkenness at the time of the alleged violence is a material fact, it cannot be presumed from the intoxication at the time the petitioner was brought before the justice that he was intoxicated at the time of the supposed battery. The time that elapsed is not shown and the petitioner may have become intoxicated thereafter.

But if the statement of the petitioner quoted in the affidavit is assumed to refer to events that took place in the petitioner's house and to the complaint, yet they do not necessarily tend to prove a criminal attack inasmuch as a person in his own house has the right to use a reasonable amount of force to eject a person who refuses to leave when rightfully ordered. Under such circumstances, even if the affidavit tends to show a certain animus on the part of the petitioner, the attitude imputed to him has very slight force in tending to prove *mens rea* with regard to the offense described in the complaint.

Some of the statements of the affidavit as presented seem probable. One of the requirements of an affidavit for continuance is that the testimony proposed is not only material, but that no evidence of a similar kind could be obtained. The affidavit says that the defendant was brought before the magistrate drunk and excited. If he was brought there he must have been brought there by some one else. There is no indication that the petitioner was alone with the justice of the peace at the time he made this statement. On the contrary, the intendment of the affidavit was that he was arrested and brought into the presence of the justice of the peace, and if he was brought there he must have been brought there by one or more persons. The petitioner is represented as

being so unruly that the justice of the peace had to call him to order, and hence it seems most unlikely that the justice of the peace was the only person who heard the words of the defendant. And as to his intoxication, if it were a fact relating back to the time of the alleged assault, some one else ought to have been able to testify to his state, even if it be supposed that the prosecutrix could not. It may be true, as the affidavit says, that Lavandero is the only person who can testify to these facts, but his statement is not corroborated by the rest of the affidavit, all of which enters into the consideration of whether this affidavit was a reasonable cause for refusing to dismiss the case.

There is, however, another reason and that is the form of the affidavit. The source from which the *fiscal* gets these facts, to which he says Lavandero will testify, is not shown. The affidavit does not show what part thereof is made on information and belief and what the *fiscal* knew of his own knowledge. This might become important if, in point of fact, the particular witness was not the only one who could testify to the facts.

It is not a very important matter to the case in view of the other considerations, but we think that the application for a continuance failed to show diligence inasmuch as the particular witness wanted was, and presumably is, a justice of the peace and an official of the Government, who ordinarily would not absent himself without the consent of his administrative chief. No attempt was shown to retain him here for the trial or to secure his prompt return.

To a large extent the case of *Ex parte Ford* proceeded on the theory of an abuse of discretion by an inferior court, and mandamus has generally been held to lie when there is such abuse. *Inglin et al.* v. *Hoppin et al.,* 156 Cal 483, 105 Pac. 582, is a very interesting case in that regard. See also note to 122 A. S. R. 746; 26 Cyc. 190.

We think that if doubt might arise as to the materiality of the facts sought to be proved, to refuse to dismiss was an

abuse of discretion. Without regard to the various continuances, the affidavit related to such minor matters that if the conviction depended upon this link in a supposed chain of evidence, circumstantial or otherwise, the case was not worthy of prosecution. If it should be urged that this testimony was necessary to dissolve a conflict in the testimony of two persons of apparently equal reliability, then, after the giving of such proposed testimony, any jury or any judge ought still to have a reasonable doubt. The fact that the defendant may have been unruly and drunk before the justice of the peace and made vague references to what he would have done on a contingency, had no bearing upon his credibility as a witness.

Now, whether it be said that there was an abuse of discretion or whether it be said that the moment to exercise a discretion never arrived, to which latter opinion we incline, it makes very little difference. The writ may not be used to control judicial discretion, but judicial acts may be controlled when no discretion arises or when it is abused. In the latter case, the courts do not attempt to control the discretion. They correct the abuse. The fact that the court may have to determine whether a fact or state of facts exists for the exercise of a plain duty does not make the act to be performed a discretionary act. 26 Cyc. 161, note 10.

We think that no due showing was made by the Government to defeat the right of the petitioner to a dismissal of a case continued beyond one hundred and twenty days without the consent and against the opposition of the petitioner. The case was set three times for trial and continued three times against such opposition of the petitioner. To warrant a refusal to dismiss a substantial reason should have been presented.

The writ must issue.

*Sustained.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.