[Crim. No. 3058. In Bank.—March 29, 1928.]

In re HARRY ALPINE on Habeas Corpus.

Morris Abraham and Charles I. Rosin for Petitioner.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, *Amici Curiae*, for Respondent.

SEAWELL, J.—This is a petition for hearing in this court after decision of the district court of appeal, second appellate district, division one (Cal. App.), 259 Pac. 457, discharging the writ of *habeas corpus* sued out by petitioner and remanding him to the custody of the sheriff of the county of Los Angeles, by whom he is held to answer to the superior court of said county on an information filed in said court charging him with murder. The petition is brought to us by authority of section 1506 of the Penal Code, as amended by the legislature of 1927 [Stats. 1927, p. 1061], which provides, in part, that an appeal may be taken "in all criminal cases prosecuted by indictment or information in a court of record where, upon appeal or original application after conviction of the defendant, an application for writ of *habeas corpus* has been heard and determined in a District Court of Appeal, either the defendant or the people may apply for a hearing in the Supreme Court."

Petitioner was tried upon an information charging him with the crime of murder, and the jury returned a verdict finding him guilty of murder in the first degree, affixing the punishment at imprisonment in the state prison for life. He appealed from the judgment and the order denying his motion for a new trial and the judgment and order were reversed. (*People* v. *Alpine*, 81 Cal. App. 456 [254 Pac. 281].) On April 25, 1927, a petition to this court for a hearing resulted in a modification of the decision and opinion of said district court of appeal, and as thus modified said petition for a hearing was denied. The order of this court was at once transmitted to said district court of appeal and

the *remittitur* of said district court of appeal was accordingly filed in the office of the clerk of the superior court of the county of Los Angeles on April 26, 1927. On the sixty-fifth day thereafter, to wit, June 30, 1927, the trial court fixed August 3, 1927, as the trial day. The defendant objected to said order of June 30, 1927, on the ground that he had not been brought to trial within sixty days after the *remittitur* had been received and filed by the clerk of the superior court, wherein the proceedings were pending. The averments of the petition are not traversed, and in substance are to the effect that at the time the superior court set said cause for trial petitioner objected to the making of the order or any order setting said cause for trial at a time beyond said sixty-day period and moved for a dismissal of the prosecution, but that his objections and motion were overruled. It is further averred that petitioner at no time consented to a continuance or postponement of the day of trial beyond sixty days from the filing date of the *remittitur*.

The return alleges the commitment of petitioner by a magistrate after preliminary examination and sets out in chronological order the proceedings had after conviction. No circumstances justifying or excusing the delay in bringing the case to trial within the period prescribed by section 1382 of the Penal Code are presented other than those which are shown by the record reciting the several steps taken by petitioner after conviction and culminating in the issuance of the writ. Said section 1382 provides: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: . . . If a defendant, whose trial has not been postponed upon his application is not brought to trial within sixty days after the finding of an indictment or filing of the information." The statute does not specify that a failure to place the accused on trial within sixty days after the filing of the *remittitur* with the county clerk shall constitute a ground of dismissal. (*People* v. *Giesea*, 63 Cal. 345; *People* v. *Lundin,* 120 Cal. 308 [52 Pac. 807].) In the latter case the point was raised by a motion to dismiss under the provisions of section 1382, *supra*, upon substantially the same grounds as are urged in this proceeding. The court said: "The motion to dismiss the information upon the ground that the defendant had not been brought to trial within sixty days

was properly denied. This provision of the statute does not apply to a case where a defendant has appealed to this court and had his case sent back for a second trial (*People* v. *Giesea,* 63 Cal. 345).'' The cases above cited decided the precise point presented in the instant case. *In re Begerow,* 133 Cal. 349 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828], a widely cited case, is relied upon by petitioner as being sufficiently forceful to conclude further argument against his right to the writ. That case is based largely upon *People* v. *Morino,* 85 Cal. 515 [24 Pac. 892], and both cases present a situation unlike the one before us in this proceeding. The Morino case, which was the earlier, was a plain case of failure to bring the accused to trial within the sixty-day limit, and had no connection whatever with a mistrial or new trial of the cause. The defendant was charged with the crime of larceny. Not having been brought to trial within sixty days after the filing of the information he moved to dismiss the case, which motion was denied. Upon trial he was convicted. The point was presented on appeal and not by writ of *habeas corpus.* This court, in department, held that the motion to dismiss should have been granted, reversed the case and directed the trial court to dismiss the information unless good reason for failure to bring the defendant to trial should be shown. In the case of *In re Begerow, supra,* the facts were that Begerow was held under two informations charging him with two separate murders. He had been tried three times upon one charge and once upon the other. Each trial resulted in a mistrial because the jury failed to agree. Since the last trial neither case had been placed upon the calendar for trial. Eighty-four days had elapsed since the discharge of the last jury before the petition for the writ of *habeas corpus* was filed. During all of said time one of the three departments of the court in which the informations were pending was occupied only fifteen days in the trial of criminal cases, while the other two departments had not been engaged in the trial of criminal cases at all. No reason was shown at any time why the cases had not been brought to trial. The decision of the court sustaining petitioner was concurred in by a bare majority of the court. Two of the justices dissented and one did not participate in the decision. The force of that opinion has since been materially weakened

by a subsequent decision of this court, which will hereafter be considered. Moreover, the Begerow case presented features of aggravating tendencies which do not exist in the instant case. Begerow had been detained in jail for the greater part of a year, during which time he had been placed on trial four separate times, and each trial resulted in a disagreement of the jury. Eighty-four days had elapsed since the last trial and the case had not been placed on the calendar, nor was any showing made that the prosecution intended to retry it. No delay had been occasioned by any action taken by petitioner. The facts of that case, which were accentuated in the opinion, must have impressed the court as being somewhat aggravative, inasmuch as there had been four vigorous efforts to convict the defendant, and failing therein the prosecution relaxed its efforts to bring the case to trial, during which period the defendant was held in jail. The peculiar facts of that case may have been responsible for carrying a majority of the court beyond a point necessary for it to have gone in order to justify the discharge of the petitioner. ■ The court may well have placed its decision on the ground that the constitution, article I, section 13, guaranteeing to every person charged with crime a speedy trial, had been violated by a failure to bring the case to trial within a reasonable time after the fourth mistrial. The opinion clearly recognized the right of petitioner to a discharge under the self-executing provision of the state constitution above cited without resorting to section 1382 of the Penal Code. The Begerow case, if petitioner's contention be sound, impliedly overrules *People* v. *Giesea*, 63 Cal. 345, and *People* v. *Lundin*, 120 Cal. 308 [52 Pac. 807], without mentioning either. Those cases are directly in point here. Both were reversed on appeal and in each case more than sixty days intervened, as in the instant case, between the filing of the *remittitur* in the lower court and the time said causes were brought to trial. It was held in each case that the provisions of section 1382 of the Penal Code did not apply to cases where a defendant has appealed to this court and had his case sent back for a second trial.

It is difficult to understand how any other decision could have been reached if the plain, unequivocal language of the statute is to be regarded. ■ It is the duty of the law-

making body in framing laws to express its intent in clear and plain language to the end that the people upon whom it is designed to operate may be able to understand the legislative will. This being done courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. Observing these cardinal rules, the soundness of the construction placed upon section 1382 of the Penal Code by this court in *People* v. *Giesea* and *People* v. *Lundin, supra,* as applied to the circumstances of those cases and to the instant case, cannot be doubted. Neither the language of section 1382 of the Penal Code nor the ancient evils which the writ of *habeas corpus* was originally designed to avert, as learnedly pointed out in the Begerow case, would justify us in enlarging upon the language of the statute. Chapter VIII, title X, part 2, of the Penal Code has to do with the dismissal of actions after indictment or information filed. ▆ Section 1382 was designed to prevent the holding of persons charged with crime in jail for an unreasonable time without the opportunity of going to trial. Subdivision 1 thereof provides that unless an indictment or information is filed against an accused within thirty days after he has been held to answer for a public offense the prosecution must be dismissed. Subdivision 2 of said section provides that the prosecution must be dismissed unless good cause to the contrary is shown "if a defendant whose trial has not been postponed upon his application, is not *brought to trial* within sixty days after the finding of an indictment or filing of the information." (Italics supplied.) No question is raised that petitioner herein was *not brought to trial* within sixty days after information filed and that a jury by its verdict found him guilty of murder in the first degree and affixed the punishment at life imprisonment and that judgment was accordingly entered by the court against him. Thereafter an appeal was taken and said judgment was reversed.

It is true that the case was not set for trial within sixty days after *remittitur* received by the clerk, but that circumstance could in no conceivable manner change the meaning of section 1382. An adequate remedy, if he was deprived of a speedy trial, was available to petitioner under the guaranty of the constitution. In order to bring the case within the provisions of section 1382 of the Penal Code, the

words "after *remittitur* filed" must be read into the section or that term must be held to be the equivalent of "after information filed." To so construe the statute would be taking an unwarranted license with the legislative prerogative. If the words "brought to trial" do not mean what the language clearly imports to the mind of the average person, layman or lawyer, then the words "new trial" as repeatedly used throughout the Penal Code are employed to no effect. A "new trial" cannot be had unless a trial has preceded it. Chapter IV, title IX, part 2, of the Penal Code provides for "Judgment upon Appeal." Section 1261 thereunder provides: "When a *new trial* is ordered it must be directed to be had in the court of the county from which the appeal was taken." Section 1262: "If a judgment against the defendant is reversed without ordering a *new trial* the appellate court must . . . direct him to be discharged therefrom. . . . " (Italics supplied.) ▪ It follows irresistibly that although a case may be reversed upon appeal the second trial is a new trial of the issues, and if the defendant was "brought to trial" in the first instance within sixty days after the finding of the indictment or filing of the information the mandate of the law so far as section 1382 is concerned has been complied with. While it is true that an accused may answer, if the matter is brought into question, that he has not suffered a prior conviction by reason of said reversal, this is because the judgment of conviction has been set aside. But that he has been "brought to trial" on the charge and has been accorded the right of trial within the meaning and intent of the statute can scarcely be questioned. The thirty and sixty day periods fixed by section 1382, *supra,* have to do with initiating the charge. Both deal definitely with the time of *finding an indictment or the filing of an information* after accusation made. Sixty days after indictment found or the filing of an information is the maximum limit prescribed for the postponement of trial unless good cause to the contrary be shown. The next code section, 1383, is persuasive on the point that the sixty-day limit was intended to apply solely to the time of finding the indictment or the filing of the information. It provides: "If the defendant is not *charged or tried* as provided in the last section [sec. 1382] and sufficient reason therefor is shown, the court may order the action to be continued from

time to time and in the meantime may discharge the defendant from custody on his own undertaking of bail for his appearance to answer the charge at the time to which the action is continued.'' (Italics supplied.)

■ It is very apparent that section 1382, *supra,* was not intended to serve as a handmaid of the writ of *habeas corpus.* The process by which an accused is detained may be invulnerable as against the writ of *habeas corpus* and yet, by force of the statute and by no other right, the prosecution will be dismissed unless the accused has been brought to a public trial within sixty days after the charge is laid unless cause is shown to the contrary. No other ground of release need exist except the one which the statute has specifically created. The method provided by the statute for enforcing the remedy is by motion to dismiss the prosecution. If the trial court wrongfully refuses to dismiss the prosecution a writ of mandate will lie to compel its dismissal. (*In the Matter of Ford,* 160 Cal. 334 [Ann. Cas. 1912D, 1267, 35 L. R. A. (N. S.) 882, 116 Pac. 757].)

In the instant case the petitioner abandoned the plain, speedy, and adequate remedy which was open to him by force of the statute which he invoked (*In the Matter of Ford,* 160 Cal. 334 [Ann. Cas. 1912D, 1267, 35 L. R. A. (N. S.) 882, 116 Pac. 757]), and turned to the writ of *habeas corpus.*

■ The writ of *habeas corpus* may not be invoked where the accused has such a remedy under the orderly provisions of a statute designed to rule the specific case upon which he relies for his discharge. This would be an abuse of process, as his relief under the remedy provided by the statute would accomplish all that he was seeking and all that the writ of *habeas corpus* was ever designed to accomplish, to wit, the discharge of the accused. In order to make the effort of petitioner effective it becomes necessary in the first instance to hold by judicial decision rather than by statutory warrant, as observed by the district court of appeal in its opinion dismissing the writ and remanding the petitioner, that the sixty-day period prescribed by section 1382, *supra,* applies to the filing of the *remittitur* after the defendant has succeeded in gaining a new trial, contrary to the views of this court in the only cases where the precise question was presented for determination. In other words, the statute which prescribes a remedy for the discharge of persons

detained in jail contrary to its provisions, and which is separate and apart from the office of the writ of *habeas corpus,* is by judicial decision to be made an auxiliary for the employment of the writ of *habeas corpus* in order that the same result may be reached in another way, in disregard of the law's forms. ■ The right of an accused to a speedy public trial is an absolute guaranty of the constitution. Whether or not in the circumstances of the particular case there has been a denial of this privilege is a question always open to the determination of the court or judge before whom the writ is made returnable. The writ of *habeas corpus* is subject to statutory regulation. In fact, it was originally a creature of the statute. Section 1382 being a statute dealing with the detention of persons charged with crime is independent of the writ of *habeas corpus* so long as its provisions are not fundamentally oppressive, and it must be given effect according to its tenor. ■ If an accused, for any reason whatsoever, is not accorded a speedy trial the writ of *habeas corpus* is available to him if there is no plain, speedy, or adequate remedy by appeal, or by some other appropriate method which the law has provided. Had the district court of appeal held upon general grounds that the petitioner had been denied a speedy public trial its action could not be disturbed, except upon a showing of a plain abuse of discretion or upon an apparent misconstruction of a statute bearing upon the case or upon the application of a statute not germane to the case. The sole point raised and urged by petitioner is confined to the right of discharge by virtue of the statute and not upon the general ground of oppressive detention, and our decision must, therefore, be confined to the right of the petitioner as measured by the statute, which was also the single question raised in the district court of appeal, which question we think was correctly decided by that court in the first instance.

The remedy of an accused who has not been brought to trial within sixty days after indictment found or information filed has been the subject of considerable judicial controversy by this court. The question as to whether or not the writ of *habeas corpus* is the proper remedy within the purview of the statute has been considered on numerous occasions upon application for writs of *habeas corpus,* writs of

mandate and on appeals from orders refusing to dismiss the prosecution under the provisions of section 1382, *supra*. The decisions have not been altogether harmonious, nor have they always received the approval of all the members of the court. *In re Begerow, supra,* went beyond what was actually necessary for a decision of the matter before the court, and gave expression to language that would seem to extend the writ of *habeas corpus* to include all cases wherein more than sixty days had elapsed without trial had unless good cause to the contrary was shown by force alone of said section 1382.

It is important and interesting to note that Mr. Justice Temple, the learned author of the Begerow decision, had in the earlier case, *Ex parte Vinton,* 5 Cal. Unrep. 624 [47 Pac. 1019], joined with Mr. Justice Garoutte, author of the vigorous dissenting opinion in the Begerow case, in which former case (*Ex parte Vinton*) the petitioner was discharged. The dissenting opinion filed by Mr. Justice Garoutte, in which Mr. Justice Temple joined, reads: ''The prisoner is discharged by the court upon the ground that he has not been brought to trial within sixty days after his commitment. I am well satisfied that the writ of *habeas corpus* cannot be invoked in a case of this character.'' In the Begerow case Mr. Justice Temple, in justification of the abandonment of his position in *Ex parte Vinton,* said: ''In this country it has sometimes been denied that a defendant held to answer upon a valid indictment or information can be so discharged [by writ of *habeas corpus*]. It was so held in this state in *Ex parte Strong,* 3 Cal. Unrep. 706 [31 Pac. 574]. It was there said that the allegations of the petition, if true, showed that it was the duty of the superior court to dismiss the prosecution, 'but until the information is dismissed, the imprisonment is lawful.' In *Strong* v. *Grant,* 99 Cal. 100 [33 Pac. 733], it was said, in substance, that in passing upon a motion for a dismissal the court acted judicially, and could not be compelled by *mandamus*. In a concurring opinion, the chief justice said relief could be had in such a case through the writ of *habeas corpus,* and this was finally so held by the court in *Ex parte Vinton,* 5 Cal. Unrep. 624 [47 Pac. 1019].''

The dissenting opinion in *Ex parte Vinton* followed the earlier doctrine announced by this court in *Ex parte Strong,*

3 Cal. Unrep. 706 [31 Pac. 574], where it was held that the writ of *habeas corpus* was not available to an accused who had not been brought to trial within the provisions of said section 1382 of the Penal Code. *Strong* v. *Grant, supra,* which announced the doctrine that the writ of mandate could not be invoked to compel a superior court to dismiss the prosecution when the trial was not postponed upon the application of the accused and he was not brought to trial within sixty days after the filing of the information against him, was decided prior to *Ex parte Vinton.* Former Chief Justice Beatty, in a concurring opinion in *Strong* v. *Grant, supra,* held that in case of a violation of the right of trial as provided by said section 1382 either *habeas corpus* or *mandamus* must lie. His point was that any procedure that would afford speedy and adequate relief satisfied the mandate of the law. It is very clear that the former chief justice, in view of the more recent, definite decision of this court (*In the Matter of Ford,* 160 Cal. 334 [Ann. Cas. 1912D, 1267, 35 L. R. A. (N. S.) 882, 116 Pac. 757]), holding that a writ of mandate does lie to compel a superior court to dismiss the prosecution, would, as indicated in his opinion, have held that obedience to the statute was amply safeguarded if a dismissal of the prosecution could be compelled by the writ of mandate. Since the Begerow case was written the obstacles that were thrown in the way of granting speedy and adequate relief by *Strong* v. *Grant, supra,* as pointed out in the Begerow case, have been swept away by *In re Ford,* and the reasons urged in support of the Begerow case as to the remedy of the accused no longer perplex the situation. We have no way of knowing to what extent *Strong* v. *Grant,* influenced the author of the Begerow case to finally recede from his former position, but that the former case was a matter of grave concern in the determination of the Begerow case there can be no serious doubt.

All of the decisions of this court upon which petitioner relies had to do with a failure to bring the defendant to trial at all within the statutory period, or else are cases in which sixty days had passed after mistrial. In none is the rule contended for by petitioner applied where a new trial has been ordered upon a reversal of the case upon the initiative taken by the defendant. ▉ A mistrial and a

new trial are not the same thing in name or effect. A mistrial is equivalent to no trial. (*Baird* v. *Chicago etc. R. R. Co.*, 61 Iowa, 359 [13 N. W. 731, 16 N. W. 207].) It is a nugatory trial; a new trial recognizes a completed trial which for sufficient reasons has been set aside so that the issues may be tried *de novo*. This court has no power whatever to make any order based upon a mistrial, such as forms the basis of the decisions cited in support of petitioner's argument. An order granting a new trial is appealable and subject to review by this court. The decisions cited by petitioner do not, therefore, extend or enlarge the statute so as to necessarily apply to the filing date of the *remittitur* after new trial granted.

The writ of *habeas corpus* has properly been exalted in fervid language by able exponents of personal liberty. Its beneficent and humane purposes should not be minimized. It came into being during the "wicked, sanguinary and turbulent" periods in which monarchy ruled with a heavy hand. Subjects charged with frivolous offenses were forced to languish in prison for long periods of time without being afforded the privilege of having their causes presented to the courts and thereby called to the attention of the public. Mr. Justice Temple, in commenting upon the wisdom and justice of affording persons accused of crime with a speedy, public trial, in *In re Begerow* said: "For no doubt, as said by Blackstone (Commentaries, book 3, p. 138), 'persons apprehended upon suspicion have suffered long imprisonment, merely because they were forgotten.' " Of course, Blackstone's observation was directed to persons who had never been brought into the courts for trial, and the public had no opportunity of being informed as to the oppression which had cruelly been inflicted upon them. No such danger can menace a citizen whose cause has been brought to the attention of the trial and appellate courts of this state and to the public by a public trial and appeal. What we mean to hold is that the writ of *habeas corpus* is not available to petitioner as a matter of right solely by virtue of section 1382 of the Penal Code. Whether he is entitled to his release upon the general ground of unreasonable delay in bringing the case to trial independent of the code section is a point not raised. But conceding that the section should be by judicial construction extended so as to include this case, petitioner hav-

ing invoked the remedy provided by said section, which is just as efficacious as the writ of *habeas corpus* could have been, the appellate court did not deny him any substantial right by requiring him to conform to the statute in such cases made and provided. The writ of *habeas corpus* was not created for the purposes of defeating or embarrassing justice, but to promote it. Nor can it be used to nullify reasonable statutes enacted for the purpose of regulating procedure.

We now come to the second branch of the case. It will be observed that the petitioner has invoked the provision of section 1506 of the Penal Code, and is before this court on a petition for a hearing after decision of the district court of appeal. Said section is new and was added to the code by the legislature of 1927 (Stats. 1927, p. 1061). It provides as follows:

"An appeal may be taken to the District Court of Appeal by the people from a final order of a superior court made upon the return of a writ of *habeas corpus* discharging a defendant after his conviction, in all criminal cases prosecuted by indictment or information in a court of record, excepting criminal cases where judgment of death has been rendered, and in such cases to the Supreme Court; and in all criminal cases prosecuted by indictment or information in a court of record, where upon appeal or original application after conviction of the defendant an application for a writ of *habeas corpus* has been heard and determined in a District Court of Appeal, either the defendant or the people may apply for a hearing in the Supreme Court. Such appeal shall be taken and such application for hearing in the Supreme Court shall be made in accordance with rules to be laid down by the judicial council. If the people appeal, or petition for hearing in either the District Court of Appeal or the Supreme Court, the defendant shall not, in any case in which the judgment of conviction has become final, be discharged from custody pending final decision upon the appeal or petition for hearing, and he must, in such cases, be retaken into custody if he has been discharged; provided, however, that in bailable cases the defendant may be admitted to bail, in the discretion of the judge, pending decision of the appeal or petition for hearing."

It is clear from the language of said section that an appeal is only allowable *after conviction* and in those cases where there is an existing judgment against the defendant. In all other cases the law remains unchanged. The petitioner in this case has no judgment standing against him, as the judgment entered by the superior court was reversed by the district court of appeal, and so far as the judgment of conviction is concerned it was set aside by the reversal and the order remanding the case for a new trial. Inasmuch as the cause is before us by virtue of the provisions of said section it becomes important that we pass upon the validity of said section at our earliest opportunity in order that the judicial council may be advised as to the necessity of making rules in accordance with the provisions of said statute. In *In re Zany,* 164 Cal. 724 [130 Pac. 710], this court held upon the law as it then existed that the decision of any court in a *habeas corpus* proceeding, provided the court had jurisdiction, could not be reviewed by any other court. Although it had been the uniform practice of the court to refuse to entertain appeals or applications for a hearing after decision by the district court of appeal in *habeas corpus* proceedings, *In re Zany, supra,* was the first case to bring forth from this court a written opinion stating the ground upon which such denials were ordered. Two learned former justices of this court, each of whom in turn became chief justice, took divergent views of the question and each expressed himself in writing, one writing the main decision of the court and the other stating his views in a dissenting opinion. Both are illuminating expositions of the law as it then stood. Since *In re Zany, supra,* amendments to the constitution and the adoption of section 1506 have removed some of the anomalous situations pointed out in the main opinion in respect to the inequality of power conferred upon superior and appellate courts. Section 1506 provided for the first time in our legislative history that an appeal may be taken from the order of a superior court discharging a defendant after conviction to the district court of appeal, except in cases where judgment of death has been rendered, and in such cases to the supreme court. In all other respects the plan of review practically follows the law which obtains in criminal appeals generally. Whatever doubt that existed at the time *In re Zany* was decided,

as to whether a *habeas corpus* proceeding may fairly be said to be included in the terms of the constitution, which provide that the supreme court shall have power to order "any case pending" before a district court of appeal to be heard and determined by the supreme court (sec. 4, art. VI, Const.) after judgment rendered discharging the accused, has been removed by the unmistakable language of the statute that it is so included within the constitutional language. And we can see no objection on constitutional grounds against the power of the legislature to so provide. While it would not be within the power of the legislature to absolutely abrogate the privilege vouchsafed by the writ of *habeas corpus*, it is unquestionably subject to statutory control and regulation. The constitution does not pretend to hamper the law-making power in its regulatory control of the subject.

The constitution of the United States is substantially identical with our state constitution, and the supreme court of the United States did not find it was impinging upon the parent instrument by formulating rules authorized by an act of Congress (secs. 463, 464, tit. 28, U. S. Code), providing for the custody of prisoners pending a review of proceedings in *habeas corpus*. (Rule 42, Revised Rules of the Supreme Court of the United States, effective July 1, 1925.) The state legislature, by section 1506, has conferred a like power upon the judicial department of this state. We are of the view that the constitution by conferring the power of transfer of causes from the district court of appeal to the supreme court did not intend to deprive the legislature of the power to enact reasonable statutes regulating the exercise of the writ of *habeas corpus* in a manner that would tend to promote justice and prevent judicial absurdities. Formerly one superior court had the power upon an *ex parte* proceeding to nullify the judgment of another superior court, which was entrenched with all of the presumptions of regularity and validity, and there was no method by which such *ex parte* action could be reviewed, however erroneous it may have been. In fact, it was in the power of an inferior tribunal to deprive appellate courts of jurisdiction of pending causes by such interference, thereby defeating the orderly administration of the law. It will be noted that section 1506 is intended to apply to cases where a judgment has been obtained in a court of record and,

like the rules of the United States supreme court, the custody of the defendant pending appeal or hearing of the petition for hearing is subject to judicial discretion.

The writ is discharged and the petitioner is remanded to the custody of the sheriff of the county of Los Angeles.

Richards, J., Curtis, J., Langdon, J., Shenk, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent.

The plain effect of the majority opinion is to so weaken the case of *In re Begerow*, 133 Cal. 349 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828], as to pave the way for its early entire abrogation. I think that case is sound law and a proper interpretation of the rights guaranteed a human being under the constitution.

If the majority opinion be sound, after a lapse of sixty days from the finding of the indictment, the constitution does not come to the protection of the defendant. To apply the statute only to this sixty-day period and to refuse to apply it to a case where more than sixty days are allowed to elapse after a mistrial or after reversal on conviction, is to say that the longer a defendant is kept under indictment, the less right he has to a speedy determination of the charge against him. The following language of Judge Temple in the Begerow case is here squarely in point: "The imprisonment after the lapse of sixty days is just as oppressive, and, if unnecessary, as much a violation, of the rights of the accused person, as within the sixty days. There is no reason why the legislature should be desirous of protecting the rights of an accused person for sixty days, and be indifferent to his fate afterwards. To attribute such ideas to the legislature, is to charge it with folly."

So far as the second division of the opinion is concerned, the recent amendment to the Penal Code (sec. 1506) providing an appeal by the people in certain classes of *habeas corpus* proceedings, is not before us. This section is full of ambiguity and uncertainty and should not be passed upon in this proceeding. Clearly the petitioner here is not in the status required for the invocation of any of its provisions as to him as he is not now under conviction for any offense.