**FEINGLASS v. REINECKE et al.**

No. 4746.

District Court, N. D. Illinois, E. D.

Nov. 23, 1942.

Hart E. Baker, of Chicago, Ill., Arthur Garfield Hays, of New York City, and Pearl M. Hart, of Chicago, Ill., for plaintiff.

Thos. J. Courtney, State's Atty., of Chicago, Ill., for defendants.

HOLLY, District Judge.

The decision in this case was announced October 19, 1942, but as it resulted in the barring of the candidates of a political party from the official ballot of Cook County, Illinois, I have felt that I should file a memorandum of my reasons for the decision.

Abe Feinglass filed his complaint herein praying an injunction be issued restraining the defendants from omitting to print and ordering them to cause to be printed upon the official ballots to be distributed to the several election officials within their respective jurisdictions to be used at the general elections to be held on November 3, 1942, the name of Alfred Wagenecht as candidate for the office of United States Senator from the State of Illinois, and the name of Kenneth Born as candidate for Member of the House of Representatives of the Congress of the United States from the State of Illinois at large, as nominated by the Communist Party. The defendants moved to strike the complaint and dismiss the action.

The Communist Party polled less than five per cent of the total vote cast at the last preceding general election in Illinois and, therefore, under the laws of State, Ill.Rev.Stat.1941, c. 46, § 288 et seq., was compelled to nominate its candidates by petition. The statutes of the State provide that for an office to be filled by the voters of the State at large the petition shall be signed by not less than 25,000 voters, included in the aggregate of which must be the signatures of 200 qualified voters from each at least 50 counties within the State. The statute further provides that the petition shall be presented to the Governor, the Auditor of Public Accounts and Secretary of State at least 50 days prior to the day of election for which the candidates are nominated; that the Governor, the Auditor of Public Accounts and the Secretary of State shall each endorse his signature on the petition, and the date and hour of presentment, and the petition shall then be deposited with the Secretary of State. Provision is made for the filing of objections to such petitions and hear-

ings upon such objections. If no objections are filed, or if filed are not sustained on hearing, it becomes the duty of Governor, Auditor of Public Accounts and Secretary of State to certify, not less than 35 days before the election, the names of the persons nominated by such petition together with the names of all other persons legally nominated, to the county clerk of each county in the State. The name of no candidate for an office to be filled by the electors of the entire state may be placed upon the official ballot unless his name is duly certified by the Governor, Auditor of Public Accounts and Secretary of State. The county clerks of the respective counties are charged with the duty of having the ballots printed, except that in the City of Chicago and some other places in Cook County the Board of Elections Commissioners is charged with that duty.

The petition nominating Wagenecht and Born, which was in the prescribed form and contained the requisite number of signatures, was presented to the Governor, the Auditor of Public Accounts and the Secretary of State of the State of Illinois and each of them on September 12, 1942, but each of said officials refused to endorse his signature on said nominating petition and the Secretary of State refused to accept the same for deposit. As a result the nominees of said Communist Party were not certified to the County Clerk of Cook County, Illinois, (nor to the county clerk of any other county in the State) and the defendants herein refused to have the names of said nominees printed on the official ballots to be voted November 3, 1942.

No reason was given for the refusal of the Governor, the Secretary of State and the Auditor of Public Accounts to endorse their signatures on the nominating petition, but apparently it was the theory of those officers that the Communist Party is barred by the statutes of the State from having the names of its candidates placed on the official ballots. Section 291, Ch. 46, Smith-Hurd Ill.Anno.Stat. contains a provision that, "No political organization or group shall be qualified as a political party hereunder, or given a place on a ballot, which organization or group is associated, directly or indirectly, with Communist, Fascist, Nazi or other un-American principles and engages in activities or propaganda designed to teach subservience

to the political principles and ideals of foreign nations or the overthrow by violence of the established constitutional form of government of the United States and the State of Illinois."

It will be observed that by the terms of the statute to bar a party from the ballot it must be shown not only that it is associated with Communist, Nazi or Fascist or other un-American principles but also that it engages in certain activities or propaganda, to-wit, "activities or propaganda, designed to teach subservience to the political principles and ideals of foreign nations or the overthrow by violence of the established constitutional form of government of the United States and the State of Illinois."

It is not claimed that any showing was made to the officials of the State charged with receiving the petition that the Communist Party was engaged in the activities listed, or any of them. The action of those officers in refusing to endorse the petition and deposit it was purely arbitrary.

It may be contended that the name taken by the party was of itself sufficient to show that it was engaged in activities or propaganda designed to teach subservience to the political principles and ideals of foreign nations or the overthrow by violence of the government of the United States.

This theory is untenable. The term communist is defined (Webster's International Dictionary, 2nd Edition) as follows:

"1. One who believes in Communism in any of the first three senses named (See below) or attempts to put its principles into practice.

"2. A supporter of the Paris Commune; Communard.

"3. A member of the Communist Party in any country, esp. Soviet Russia."

Communism, by the same authority, is given the following definition:

"1. Communism—a system of social organization in which goods are held in common; the opposite of the system of private property.

"2. A system of social organization where large powers are given to small political units, or communes; communalism."

"3. Any theory or system of social organization involving common ownership of the agents of production of industry. The popular use of the word communism con-

forms to the third of these definitions. The scientific usage sometimes conforms to the first alone and sometimes alternates between the first and second. Most modern writers used the term indiscriminately in these two meanings.

"4. Commensalism.

"5. (Often Cap.) the principles and theories of the communist party esp. Soviet Russia."

■ The term Communist principles then may be taken to mean a theory of government under which goods and the instruments of production are held in common; or, disregarding the second definition of communist, the principles of the Communist Party, especially the Communist Party of Soviet Russia. If the principles of the Communist Party, especially the Communist Party of Soviet Russia, are assumed to be other than that goods and the agents of production in industry should be held in common then the statute is void for uncertainty as to the meaning of Communist principles.[1]

■■ If the term Communist is to be taken to mean simply a belief in a system in which goods and the instruments of production held in common by the people then the statute is clearly unconstitutional. Certainly a party may not be excluded from a place on the ballot because it advocates economic ideas which may happen to be unpopular at the time. Before the War between the States we had an economic system based upon slavery. If it were within the power of a state legislature to deny political privileges to a party because of its economic theories no party attacking the existence or extension of slavery might ever have had an opportunity to present its case to the electorate. For many years the majority of our people seemed to have been of the opinion that the prosperity of our country required the maintenance of a system of protective tariffs. If a party advocating common ownership of goods and instruments of production may be barred from the ballot so may a party advocating free trade.

■ The other tests prescribed by the statute for determining whether a party may have a place on the ballot also are so vague and indefinite as to make the Act invalid. Such terms as "un-American" and "the political principles of foreign nations" lack the precision required in a statute which affects the rights of a political group to appeal to the electorate. Any political idea that happens to conflict with the economic or political notions of an individual is apt by him to be deemed un-American. The "political principles and ideals of foreign nations" run all the way from various forms of democratic government such as ours to those of more or less limited monarchy and to dictatorship. In some of the democratic nations, instead of an executive elected by the people, that officer is selected by the legislative body. I cannot imagine that a statute denying a place on the ballot to a party which felt that the latter method was the better would be held to be constitutional, but the Illinois statute is broad enough to bar such a party.

■ Further, I am of the opinion that the Governor, the Auditor of Public Accounts and the Secretary of State abused their powers when they refused to endorse the nominating petition. Their duty was merely a ministerial one. They were not authorized to pass upon the question whether the petition was a valid one[2] or whether the party offering to file the petition was entitled to participate in the election. The statute commanded them to endorse the petition and certify the name of the candidates to the County Clerks of the State. A tribunal is created by the statute to hear and pass upon objections and determine the validity of the petition upon objections filed.[3] No objections were filed. The names of the candidates should have been certified.

■ I am of the opinion, however, that plaintiffs are not entitled to the relief prayed. This case came on for hearing on the 19th day of October, 1942, within 15 days of the day of the election. It appears from the affidavits filed herein by

---

[1] A. B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589; Ex parte Alpine, 203 Cal. 731, 265 P. 947, 58 A.L.R. 1500; Connally v. Gen. Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Vallat v. Radium Dial Co., 360 Ill. 407, 196 N. E. 485, 99 A.L.R. 607.

[2] Except, perhaps, to observe whether it was in the prescribed form and had, apparently, the requisite number of signatures.

[3] Smith-Hurd Ill.Anno.Stat. Ch. 46, §§ 298a, 298b, 298c.

442

the defendants that they had theretofore entered into a contract with a printing firm to print ballots containing the names certified to them and that over 1,000,000 ballots had already been printed; that if it were necessary to print new ballots containing the additional names, they would be required by law to secure new bids for the printing thereof, which would take at least three days, and that it would take at least three weeks to print the ballots. If the court should grant the injunction the result would be that the county clerk and the Election Commissioner would have no ballots to distribute and the voters of Cook County would be deprived of opportunity to vote at this election.

The defendants have raised other questions, among them that the court has no authority to order the County Clerk and Election Commissioners to print ballots containing names not certified and that the plaintiffs should have sued to compel the Governor, Auditor and Secretary of State to certify the names, but I do not consider it necessary to pass on that question.