Filed 5/29/14  P. v. Cuevas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C067437 |
| Plaintiff and Respondent, | (Super. Ct. No. MF031966B) |
| v. | |
| GERARDO CUEVAS III, | |
| Defendant and Appellant. | |

Defendant Gerardo Cuevas III contends the trial court erred in his trial on various sex offenses with a minor when it admitted evidence of prior uncharged crimes under Evidence Code section 1108, and when it instructed the jury with CALCRIM No. 318 on the use of a witness's pretrial statements.  He also claims the court miscalculated his presentence custody credits.  We disagree with his contentions and, except to order a correction to the abstract of judgment be filed noting the correct number of custody credits, we affirm the judgment.

1

FACTS

33-year-old Robert Wolfe, a friend of defendant's, was regularly having sex with 13-year-old Jane Doe. Wolfe introduced Doe to defendant. Defendant was approximately 32 years old when he met Doe. Doe testified to seven sexual encounters with defendant.

The first encounter occurred at defendant's apartment. Wolfe directed Doe into defendant's bedroom and told her to disrobe. Both men lay on the bed wearing only their shirts. Doe had intercourse with Wolfe while defendant lay next to them. After Wolfe finished and left the room, defendant had intercourse with Doe from behind. Then Wolfe reentered the room and orally copulated defendant. Doe had not wanted to have sex with defendant; she did not care about him and only had sex with him to please Wolfe.

The second encounter occurred a couple of months later in Wolfe's apartment. Defendant was there to smoke marijuana with Wolfe and Doe. Wolfe brought out pornographic magazines and played pornography on his computer and television. Defendant pushed Doe into the kitchen, pulled down her pants, and had intercourse with her from behind. Wolfe pointed a digital camera at them, but Doe did not know if he was actually taking pictures.

The third encounter took place at defendant's apartment. Wolfe, Doe, and defendant were on defendant's couch. Doe orally copulated Wolfe while defendant had intercourse with Doe from behind. There was a video camera on a coffee table in the room pointed at the three of them. Doe believed the camera was running because the camera's light was on. Doe went into the bathroom to clean herself. As she left the bathroom, she saw defendant shredding the video tape from the video camera in a paper shredder.

The fourth encounter occurred when defendant was driving Doe home. Defendant pulled into a parking lot. He wanted to have sex with her, but she did not. She orally copulated him instead.

2

The fifth encounter occurred in defendant's apartment. Wolfe and his wife had moved into the apartment in December 2006, and Doe would spend the night there on occasion. One night, defendant came home from work while on break. Doe was sleeping on the couch. Defendant woke her and had sex with her. Doe said the incident "kind of felt like rape. . . . I didn't want it to happen and I was sleeping. It just didn't feel right to me." Doe did not do anything to stop defendant because she was afraid of saying no.

The sixth encounter occurred on another night when Doe was staying at defendant's apartment with Wolfe and his wife. Doe went into defendant's bedroom to ask him for some headache medicine. Defendant awoke and forced her into his bathroom. He pushed her face first against the wall. He pulled her pants down a little bit. She felt his penis against her. She was able to get away, and she ran out of the bathroom.

The seventh incident took place at a house to which defendant had moved. Wolfe took Doe to the house. They went into defendant's bedroom, and both Wolfe and defendant had intercourse with her.

Doe testified she was high on drugs every time she had sex with Wolfe and defendant.[1]

Pursuant to Evidence Code section 1108, the prosecution presented evidence of defendant's prior sexual relationships with two teenage girls. G.C. was 14 years old and defendant was 17 years old when they met. They began dating when she was 15. At 16, she became pregnant with defendant's child. The child was born in 1994.

M.R. met defendant when she was 15 years old, and he was 21 years old. At 16, she became pregnant with defendant's child. The child was born in 1997.

---

[1] Wolfe pleaded guilty to molestation charges. He testified for the prosecution.

PROCEDURAL HISTORY

The trial court declared a mistrial in defendant's first trial, as the jury was unable to reach a verdict. In the second trial, the jury convicted defendant of three counts of committing lewd and lascivious acts on a child under the age of 14 years (Pen. Code, § 288, subd. (a)), and found true the allegations that defendant engaged in substantial sexual conduct with a child under the age of 14. (Pen. Code, § 1203.066, subd. (a)(8).) It acquitted defendant of an additional count of lewd and lascivious acts on a child and a count of using a minor under the age of 14 to perform an obscene act. (Pen. Code, § 311.4, subd. (c).)

The trial court sentenced defendant to a state prison term of 12 years, calculated as follows: the upper term of eight years on one of the lewd conduct counts, plus consecutive two years for each of the remaining lewd conduct counts.

DISCUSSION

I

*Evidence of Prior Uncharged Sex Crimes*

In defendant's first trial, the prosecution by in limine motion sought to introduce evidence of defendant's prior sexual relationships with two underage girls, G.C. and M.R. Defense counsel opposed the motion, arguing the evidence would confuse the issues and was too dissimilar to the facts in the current case. The trial court ruled the evidence was admissible under Evidence Code section 1108 (section 1108), finding its probative value outweighed its prejudicial effect.

During defendant's retrial, the prosecution again sought to introduce the section 1108 evidence. Defense counsel did not object. He stated that because the evidence was admitted in the first trial, he did not see a reason why the evidence would not be admitted in the retrial. The court admitted the evidence.

4

Defendant contends the court erred by admitting the evidence. He argues the prejudicial effect of the evidence outweighed its probative value because the uncharged conduct was too dissimilar and remote to be probative of his propensity to commit the charged offenses. He also asserts section 1108 is unconstitutional. We disagree with his contentions.

Initially, we discuss forfeiture, an issue neither side raised. Defendant did not object to introduction of the section 1108 evidence at his second trial, following mistrial in his first trial. This omission of an objection forfeits his claim here. As with a new trial, when a mistrial is called, according to long-held precedent, the parties are placed in the same position as if the first trial had never occurred. (See Pen. Code, § 1180.) "A mistrial is equivalent to no trial." (*In re Alpine* (1928) 203 Cal. 731, 743, disapproved on another ground in *Sykes v. Superior Court* (1973) 9 Cal.3d 83, 90, fn. 7.) It was thus incumbent on defendant to object to the admission of the section 1108 evidence, even though it had been admitted in the first trial, if he intended to challenge the admission on appeal. His failure to do so forfeits his claim here.

Even if defendant had objected at trial, we still would find the court did not err by admitting the evidence. Under section 1108, a court in a criminal sex offense trial may admit evidence of other uncharged sex offenses committed by defendant if the evidence is not unduly prejudicial under Evidence Code section 352. (§ 1108, subd. (a).)

"By reason of section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under [Evidence Code] section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright

5

admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 916-917.)

We review a trial court's ruling under section 1108 for abuse of discretion. (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

We find no abuse of discretion here. Defendant's prior offenses were sufficiently similar to the charged offenses. The uncharged offenses need not be identical to the charged offenses in order to be admissible. "It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 41, fn. omitted, disapproved on another ground in *People v. Loy, supra*, 52 Cal.4th at pp. 73-74.) Defendant's charged and uncharged offenses are defined in section 1108 as sex offenses that trigger the statute's provisions. (§ 1108, subd. (d).) And the acts were in fact similar. In both the charged and uncharged offenses, defendant engaged in consensual sexual intercourse with minors as an adult, and did so regardless of his age.

Defendant's prior offenses were not remote from the charged offenses. "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. . . . [¶] Remoteness of prior offenses relates to 'the question of predisposition to commit the charged sexual offenses.' [Citation.] In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, . . . significant similarities between the prior and the charged offenses may 'balance[] out the remoteness.' [Citation.] Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 284-285.)

6

The similarity between defendant's charged and uncharged offenses outweighs any remoteness between the two sets of acts. Despite the passage of 10 and 13 years since his sexual relations with G.C. and M.R., defendant again engaged in sexual intercourse with a minor. In addition, the gap of 10 and 13 years is less remote than gaps of time in other cases that were found not to be remote. (See, e.g., *People v. Frazier, supra*, 89 Cal.App.4th at p. 41 [15- or 16-year gap]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977, 991-992 [more than a 20-year gap].)

Moreover, the uncharged crimes evidence was probative. The evidence bolstered Doe's testimony and credibility from independent and unrelated sources by showing defendant's propensity to engage in sex with minors. Receiving the evidence did not unduly consume the court's time. And the evidence was not inflammatory in light of the charged crimes.

Had the trial court been given the opportunity in the second trial to weigh the evidence's probative value against its prejudicial effect, we have no doubt it would have relied upon these and other factors and found the evidence admissible under section 1108.

Defendant contends section 1108 is unconstitutional. Our Supreme Court has rejected his argument. (*People v. Falsetta, supra*, 21 Cal.4th at p. 915.) We are bound by this ruling (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and thus will not address defendant's contention.

II

*Constitutionality of CALCRIM No. 318*

The trial court instructed the jury with CALCRIM No. 318, which addresses pretrial statements made by a witness. The instruction states that if the jury hears evidence of statements a witness made before trial, and if it determines the witness in fact made the pretrial statements, it may use the statements in two ways: (1) to evaluate whether the witness's testimony in court is believable; and (2) as evidence that the information in the pretrial statements is true.

7

A court may use this instruction when a testifying witness has been confronted with a prior inconsistent statement. "CALCRIM No. 318 informed the jury that it could consider discrepancies between out-of-court statements and in-court testimony to decide that a witness's statements on the stand were not trustworthy." (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 365.)

Defendant contends the instruction violates his due process rights because it informed the jury Doe's pretrial statements were more likely to be true simply because she made them. We rejected this argument in *People v. Hudson* (2009) 175 Cal.App.4th 1025, and our reasoning in that case still applies. "CALCRIM No. 318 informs the jury that it may reject in-court testimony if it determines inconsistent out-of-court statements to be true. By stating that the jury 'may' use the out-of-court statements, the instruction does not require the jury to credit the earlier statements even while allowing it to do so. [Citation.] Thus, we reject defendant's argument that CALCRIM No. 318 lessens the prosecution's standard of proof by compelling the jury to accept the out-of-court statements as true." (*People v. Hudson, supra,* at p. 1028.)

Defendant acknowledges the jury also received other instructions that would apply to the jury's understanding and application of CALCRIM No. 318, but he claims the jury would not have "balanced instructions against each other to try to counteract the unambiguous language" of CALCRIM No. 318. We disagree with this contention. "[T]he ' "correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' [Citations.]" (*People v. Hudson, supra*, 175 Cal.App.4th at pp. 1028-1029.) And we presume the jury was able to follow all of the court's instructions. (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1190.)

The trial court provided other instructions which, when followed by the jury, ensured the jury applied CALCRIM No. 318 correctly. The court instructed the jury with CALCRIM No. 226, which instructed the jury it had to determine the credibility of each

8

witness, and that it could accept or reject any testimony. The instruction told the jury that in making that determination, it could consider, among other matters, prior inconsistent statements. Thus the jury knew it had to determine the credibility of all statements made by a witness, including the witness's out-of-court statements. The court also instructed the jury with CALCRIM No. 220, which explained the prosecution's burden to prove defendant guilty beyond a reasonable doubt. As we said in *People v. Hudson, supra*, "[r]ead as a whole, the instructions did not lessen the prosecution's burden of proof by elevating out-of-court statements to unquestionable reliability." (175 Cal.App.4th at p. 1029.) CALCRIM No. 318 did not violate defendant's constitutional rights.[2]

## III

### *Presentence Custody Credits*

The trial court determined defendant earned a total of 64 days of presentence custody credit. The abstract of judgment, however, states the court awarded 81 days of credit. Defendant asserts the court erred, and that he actually earned 65 days. The Attorney General argues the court correctly provided 64 days of credit, and the abstract should be corrected to state the correct amount. We agree with the Attorney General.

The one-day difference arises from information contained in the probation report. The report states defendant was arrested on January 9, 2009, but it also states his custody in the San Joaquin County Jail began January 10, 2009. Defendant argues he should be given one day of credit to account for the day he was arrested. Custody credits are given for days a prisoner is "confined" in a county jail or city jail, from the date of arrest to the commencement of sentence. (Pen. Code, § 4019.) Although defendant was arrested on

---

[2]    The Attorney General asserts defendant forfeited his challenge to CALCRIM No. 318 because he did not seek amplification or clarification of the instruction. We disagree. A defendant need not object to preserve a challenge to an instruction he claims incorrectly states the law to the detriment of his substantial rights. (*People v. Tuggles, supra*, 179 Cal.App.4th at p. 364.)

January 9, there is no evidence he was confined in a county jail or city jail until the following day. The trial court thus correctly determined defendant was entitled to 64 days of credit, and we order the court clerk to prepare an corrected abstract recording the correct amount.

DISPOSITION

The clerk of the trial court is ordered to prepare a corrected abstract of judgment awarding defendant a total of 64 days of presentence custody credit, and to forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

            NICHOLSON     , J.

We concur:

        RAYE            , P. J.

        DUARTE         , J.